UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE MONTALVO,<br>CDCR #P-60879,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　vs.<br><br>RALPH DIAZ, CDCR Secretary;<br>KATHLEEN ALLISON, CDCR Director;<br>DANIEL PARAMO, Warden, Donovan<br>State Prison,<br><br>　　　　　　　　　　Defendants. | Case No.: 3:19-cv-00363-CAB-JLB<br><br>**ORDER:**<br><br>**1) DENYING MOTION FOR TEMPORARY RESTRAINING ORDER PURSUANT TO Fed. R. Civ. P. 65(b)**<br>**[ECF No. 2]**<br><br>**AND**<br><br>**2) DIRECTING CLERK OF COURT TO ISSUE A SUMMONS PURSUANT TO Fed. R. Civ. P. 4(b)** |

**I.　Procedural History**

Jose Montalvo ("Plaintiff"), currently incarcerated at Richard J. Donovan Correctional Facility ("RJD") in San Diego, California, is proceeding *pro se* in this civil action filed pursuant to 42 U.S.C. § 1983. (*See* Compl., ECF No. 1.)

Plaintiff prepaid the $400 filing fee required by 28 U.S.C. § 1914(a) to commence a civil action at the time he submitted his Complaint on February 21, 2019. (*See* ECF No. 1-2, Receipt No. 109347.) Therefore, unlike most *pro se* litigants, Plaintiff has not filed a

1 | Motion to Proceed *In Forma Pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a). He has,
2 | however, filed a Motion for a Temporary Restraining Order ("TRO") together with this
3 | Complaint (ECF No. 2). But the docket has yet to show that Plaintiff has requested that
4 | the Clerk issue a summons, "present[ed] a summons to the clerk for signature and seal"
5 | pursuant to Fed. R. Civ. P. 4(b), or has yet executed service of either his Complaint or
6 | TRO upon any of the named Defendants. *See Boudette v. Barnette*, 923 F.2d 754, 757
7 | (9th Cir. 1991) (absent a specific request and court order that the U.S. Marshal effect
8 | service on their behalf pursuant to Fed. R. Civ. P. 4(c)(3), persons who prepay civil filing
9 | fees "remain[] responsible for timely service."); *Omni Capital Int'l, Ltd. v. Rudolf Wolff*
10 | *& Co.*, 484 U.S. 97, 104 (1987) ("Before a . . . court may exercise personal jurisdiction
11 | over a defendant, the procedural requirement of service of summons must be satisfied.").

## II. Plaintiff's Allegations

In both his verified Complaint and Motion for TRO, Plaintiff claims that on December 12, 2017, Kathleen Allison, the Director of the California Department of Corrections and Rehabilitation ("CDCR")'s Division of Adult Institutions in Sacramento, California, authored a "department memorandum" announcing an "expansion of the merging of the SNY (Sensitive Needs Yard/ previously called Protective Custody) prisoners with General Population ("GP") prisoners in all Level 1 and 2 yards." (Compl., ECF No. 1 at 2, 3; *see also* Pl.'s Mot. for TRO, ECF No. 2 at 2.) On September 10, 2018, Plaintiff contends Defendant Diaz, the Secretary of the CDCR, authored a subsequent memorandum "which set[] forth [a] schedule for … merging the yards" in "what they refer to as Non-Designated Programming Facilities ("NDPFs")." (Compl., ECF No. 1 at 2, 3, 7.)

Plaintiff contends that while he was a member of the Inmate Advisory Council and incarcerated at Avenal State Prison, he "heard about" the "inten[t]ion to integrate" GP and SNY inmates, and "hear[d] that the merged yards [were] promoting violence and gladiator games" from fellow inmates who "came from the merged yards" and who "received disciplinary action, even though they were the victims." (*See* Decl. of Jose

Montalvo [hereafter "Pl.'s Decl."], ECF No. 1 at 16-17; Compl., ECF No. 1 at 3.) Plaintiff is a GP inmate, who "believes that the merging of the yards threatens [his] safety." (*Id.* at 17; *see also* Pl.'s TRO, ECF No. 2 at 2.)

On February 7, 2019, Plaintiff "was transferred to RJD to be merged with SNY prisoners." (Compl., ECF No. 1 at 3.) He claims the "planned merge would place [him] at serious risk of harm or injury," and that "Defendants are well aware of and are completely disregarding such an excessive risk to [his] health and safety." (*Id.* at 3.)

Plaintiff seeks no monetary damages, alleges Defendants Diaz, Allison, and Paramo all acted in both their individual and official capacities, and requests the issuance of a declaratory judgment "stating that the Defendants' actions … violate [the] Eighth Amendment … and constitute deliberate indifference to [his] health and safety." (*Id.* at 7.) Plaintiff also requests immediate injunctive relief, as set forth in his Motion for TRO, "enjoining the named Defendants, … from merging the SNY and GP prisoners together" in NDPFs. (*Id.* at 7.)

## III. Screening of Complaint pursuant to 28 U.S.C. § 1915A

As a preliminary matter, the Court has conducted an initial review of Plaintiff's Complaint pursuant to 28 U.S.C. § 1915A, because he is a prisoner and seeks "redress from a governmental entity or officer or employee of a governmental entity." *See* 28 U.S.C. § 1915A(a). The Court determines, to the extent Plaintiff seeks only declaratory and injunctive relief against the named Defendants in their official capacities, *see* Compl., ECF No. 1 at 2, 7, his Complaint alleges cognizable Eighth Amendment claims with respect to Defendants' implementation of CDCR's plan to integrate him as a GP inmate together with SNY inmates at a NDPF. *See* 28 U.S.C. § 1915A(a).

Section 1915A "mandates early review—'before docketing [] or [] as soon as practicable after docketing'—for all complaints 'in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.'" *Chavez v. Robinson*, 817 F.3d 1162, 1168 (9th Cir. 2016). The mandatory screening provisions of § 1915A apply to all prisoners, no matter their fee status, who bring suit against a

governmental entity, officer, or employee. *See, e.g. Resnick v. Hayes*, 213 F.3d 443, 446-47 (9th Cir. 2000). "On review, the court shall … dismiss the complaint, or any portion of the complaint," if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Olivas v. Nevada ex rel. Dept. of Corr.*, 856 F.3d 1281, 1283 (9th Cir. 2017) (quoting 28 U.S.C. § 1915A(b)).

Here, Plaintiff contends Defendants are implementing a forced integration policy with "deliberate indifference to conditions [which] pos[e] a substantial risk of serious of harm" to him, *see* Compl., ECF No. 1 at 7, and that it violates his Eighth Amendment right to "be reasonably protected from the constant threat of violence and assault." (Pl.'s Mem. of Law in Supp. of TRO, ECF No. 1 at 12.) "[T]he Eighth Amendment requires that prison officials 'must take reasonable measures to guarantee the safety of the inmates.'" *United States v. Williams*, 842 F.3d 1143, 1153 (9th Cir. 2016) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) ("[P]rison officials have a duty [under the Eighth Amendment] ... to protect prisoners from violence at the hands of other prisoners.")). "[P]rison officials are ... prohibited from being deliberately indifferent to policies and practices that expose inmates to a substantial risk of serious harm." *Parsons v. Ryan*, 754 F.3d 657, 677 (9th Cir. 2014); *Farmer*, 511 U.S. at 841. Thus, a prisoner may state "a cause of action under the Eighth Amendment by alleging that [prison officials] have, with deliberate indifference, exposed him to [conditions] that pose an unreasonable risk of serious damage to his future health." *Helling v. McKinney*, 509 U.S. 25, 35 (1993).

"Suits against state officials in their official capacity … should be treated as suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Holley v. Cal. Dept. of Corr.*, 599 F.3d 1108, 1111 (9th Cir. 2010) (treating prisoner's suit against state officials in their official capacities as a suit against the state of California). An official-capacity suit "represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of*

4

*Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). Such a suit "is not a suit against the official personally, for the real party in interest is the entity." *Graham*, 473 U.S. at 166.

A claim for prospective injunctive relief against a state official in his or her official capacity is not barred by the Eleventh Amendment provided the official has authority to implement the requested relief. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 92 (1989). Moreover, "[a] plaintiff seeking injunctive relief against the State is not required to allege a named official's personal involvement in the acts or omissions constituting the alleged constitutional violation." *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013) (citing *Hafer*, 502 U.S. at 25; *Graham*, 473 U.S. at 166); *see also Rouser v. White*, 707 F. Supp. 2d 1055, 1066 (E.D. Cal. 2010) (proper defendant for injunctive relief in suit seeking implementation of CDCR policy is the CDCR Secretary in his official capacity). Instead, Plaintiff need only identify the law or policy challenged as a constitutional violation and name the official or officials within the entity who is or are alleged to have a "fairly direct" connection with the enforcement of that policy, *see Holmes v. Estock*, No. 3:16-CV-02458-MMA-BLM, 2018 WL 5840043, at *4 (S.D. Cal. Nov. 8, 2018) (quoting *Ex parte Young*, 209 U.S. 123, 157 (1908)), and can appropriately respond to injunctive relief. *Hartmann*, 707 F.3d at 1127 (citing *Los Angeles Cnty. v. Humphries*, 526 U.S. 29, 35-37, 39; *Hafer*, 502 U.S. at 25); *Colwell,* 763 F.3d at 1071; *McQueen v. Brown*, No. 2:15-CV-2544-JAM-AC P, 2018 WL 1875631, at *4 (E.D. Cal. Apr. 19, 2018), *report and recommendation adopted*, No. 2:15-CV-2544-JAM-AC P, 2018 WL 2441713 (E.D. Cal. May 31, 2018).

Thus, while Plaintiff alleges no facts to suggest the Secretary of CDCR, the Director of the CDCR's Division of Adult Institutions, or RJD's Warden were personally involved in authorizing his transfer to RJD, a NDPF facility, or to have individually determined him eligible for placement on an integrated yard there, all are alleged to have directed and to be currently implementing the NDPF policy with "deliberate indifference to conditions posing a substantial risk of serious harm to [him]." (Compl., ECF No. 1 at 3.) Moreover, Defendants Diaz, Allison, and Paramo, alleged to have been acting in their

official capacities as a CDCR Secretary, Director, and Warden respectively, would have the authority to "ensure execution of any order issued." *Hartmann*, 707 F.3d at 1127.

Therefore, the Court finds Plaintiff's Eighth Amendment official-capacity claims for declaratory and injunctive relief "are sufficient to meet the low threshold for proceeding past the screening stage," and are not subject to sua sponte dismissal pursuant to 28 U.S.C. § 1915A(b)(1) or (2). *See Wilhelm v. Rotman*, 680 F.3d 1113, 1123 (9th Cir. 2012); *Colwell v. Bannister*, 763 F.3d 1060, 1070 (9th Cir. 2014) (finding Director of Nevada Department of Corrections was proper defendant in prisoner's Eighth Amendment inadequate medical care claims "'because he would be responsible for ensuring that injunctive relief was carried out, even if he was not personally involved in the decision giving rise to [the plaintiff's] claims.'") (quoting *Pouncil v. Tilton*, 704 F.3d 568, 576 (9th Cir. 2012)).

## IV. Motion for Temporary Restraining Order

As discussed above, Plaintiff's Complaint seeks relief in form of a "TRO and Preliminary Injunction enjoining the named Defendants, their successors in office and all other persons acting in concert[] and participation with them from merging the SNY and GP prisoners together" in NDPFs. (Compl., ECF No. 1 at 7.)

Plaintiff has also filed a separate "Ex Parte Motion for TRO and Preliminary Injunction" pursuant to Fed. R. Civ. P. 65 seeking to "enjoin [Defendants] from placing/mixing or 'merging' [him] with SNY prisoners at [RJD], or any other California State Prison Facility." (ECF No. 2 at 3.) In support of his TRO, Plaintiff has filed a Memorandum of Law, *see* ECF No. 1 at 9-14, attached to which are his Declaration, *id.* at 15-17, a Declaration submitted by his wife, Ruthie Montalvo, *id.* at 18-22 (hereafter "Ruthie Decl."), and another submitted by Kim McGill, an Organizer for the Youth Justice Coalition. (*Id.* at 23-27 [hereafter "McGill Decl."].) All three Declarations are verified under penalty of perjury pursuant to 28 U.S.C. § 1746. (*Id.* at 17, 22, 27.)

///

///

6

3:19-cv-00363-CAB-JLB

A. Standard of Review

Procedurally, a federal district court may issue emergency injunctive relief only if it has personal jurisdiction over the parties and subject matter jurisdiction over the lawsuit. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc*., 526 U.S. 344, 350 (1999) (noting that one "becomes a party officially, and is required to take action in that capacity, only upon service of summons or other authority-asserting measure stating the time within which the party served must appear to defend."). The court may not attempt to determine the rights of persons not before it. *See, e.g., Hitchman Coal & Coke Co. v. Mitchell*, 245 U.S. 229, 234-35 (1916); *Zepeda v. INS*, 753 F.2d 719, 727-28 (9th Cir. 1983); *Lathrop v. Unidentified, Wrecked & Abandoned Vessel*, 817 F. Supp. 953, 961 (M.D. Fl. 1993); *Kandlbinder v. Reagan*, 713 F. Supp. 337, 339 (W.D. Mo. 1989); *Suster v. Marshall*, 952 F. Supp. 693, 701 (N.D. Ohio 1996); *see also Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) (injunctive relief must be "narrowly tailored to give only the relief to which plaintiffs are entitled"). Under Federal Rule of Civil Procedure 65(d)(2) an injunction binds only "the parties to the action," their "officers, agents, servants, employees, and attorneys," and "other persons who are in active concert or participation." Fed. R. Civ. P. 65(d)(2)(A)-(C).

The substantive purpose of a TRO is to preserve the status quo before a preliminary injunction hearing may be held; its provisional remedial nature is designed merely to prevent irreparable loss of rights prior to judgment. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974). But the legal standard that applies to a motion for a TRO is the same as a motion for a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co*., 240 F.3d 832, 839 n.7 (9th Cir. 2001).

"A preliminary injunction is an extraordinary remedy never awarded as of right, and the grant of a preliminary injunction is a matter committed to the discretion of the trial judge[.]" *Epona v. Cty. of Ventura*, 876 F.3d 1214, 1227 (9th Cir. 2017) (internal quotation marks and citations omitted). "'A plaintiff seeking a preliminary injunction

must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Glossip v. Gross*, __ U.S. __, 135 S. Ct. 2726, 2736-37 (2015) (*quoting Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008)). "Under *Winter*, plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction." *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1131 (9th Cir. 2011).

In addition, the PLRA requires prisoners to satisfy additional requirements when seeking preliminary injunctive relief against prison officials:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2).

Section 3626(a)(2) places significant limits upon a court's power to grant preliminary injunctive relief to inmates, and "operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators—no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Gilmore v. People of the State of California*, 220 F.3d 987, 998-99 (9th Cir. 2000).

B.  Discussion

First, the Court notes Plaintiff's case is still in its preliminary stage, and nothing in the Court's docket shows that he has effected service of summons, his Complaint, or his TRO upon any of the named Defendants. *See* Fed. R. Civ. P. 4(c)(1) ("A summons must be served with a copy of the complaint. The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) and must furnish the necessary copies to the person who makes service."); Fed. R. Civ. P. 4(l) ("Unless

service is waived, proof of service must be made to the court."); Fed. R. Civ. P. 4(k)(1) ("Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant."). Unless and until Plaintiff demonstrates he has properly served the Defendants in this case, the Court lacks personal jurisdiction over them, and therefore may not grant the injunctive relief he seeks. *See* Fed. R. Civ. P. 65(d)(2); *Murphy Bros., Inc.*, 526 U.S. at 350; *Zepeda*, 753 F.2d at 727-28.

Second, the Court may issue a TRO without written or oral notice to the adverse party only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," and Plaintiff "certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(A), (B). Although the restrictions imposed are stringent, they "reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose*, 415 U.S. at 438-39.

Plaintiff claims generally in his TRO that he "should not be required to give notice … at this juncture," because "imminent, immediate, and irreparable injury will result … before the Defendants can be heard in opposition." *See* TRO, ECF No. 2 at 2 ¶ 3. But this is a mere restatement of Rule 65(b)(1), and neither Plaintiff's Motion nor the sworn Declarations he offers in support "clearly show" "specific facts" to adequately explain why notice under Rule 65(b) should not be required. Nor do they demonstrate that he will suffer "immediate and irreparable injury, loss, or harm" in the absence of injunctive relief. *See Winter,* 555 U.S. at 20; *Alliance for the Wild Rockies,* 632 F.3d at 1131; *Morris-Rivers, LLC v. Sonic Cavitation, LLC*, No. 2:16-CV-02877-JAD-PAL, 2016 WL 7341703, at *2 (D. Nev. Dec. 19, 2016) (finding declaration that notice of TRO to adverse party should not be required because movant faced "immediately at risk of damage and of being transferred to Canada" insufficient to satisfy Fed. R. Civ. P. 65(b)(1)(B)'s certification requirement).

An adequate showing of irreparable harm is the "'single most important prerequisite for the issuance of a [TRO].'" *Universal Semiconductor, Inc. v. Tuoi Vo*, No. 5:16-CV-04778-EJD, 2016 WL 9211685, at *2 (N.D. Cal. Nov. 29, 2016) (quoting *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005)). To successfully make that showing, the moving party must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis original). A TRO ordered on anything less is "inconsistent" with the "characterization of injunctive relief as an extraordinary remedy...." *Id.*

"The fact that plaintiff has met the pleading requirements allowing him to proceed with the complaint does not, *ipso facto*, entitle him to a preliminary injunction." *Claiborne v. Blauser*, No. CIV S-10-2427 LKK, 2011 WL 3875892, at *8 (E.D. Cal. Aug. 31, 2011), *report and recommendation adopted*, No. CIV S-10-2427 LKK, 2011 WL 4765000 (E.D. Cal. Sept. 29, 2011). Instead, to meet Rule 65(b)(1)'s "imminent, immediate and irreparable" requirement, Plaintiff must do more than plausibly *allege* imminent harm; he must demonstrate it. *Caribbean Marine Servs. Co., Inc. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988). This requires Plaintiff to clearly show specific facts that demonstrate a credible threat of immediate and irreparable harm. Fed. R. Civ. P. 65(b). "Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." *Id.* at 674-75.

In his Declaration, Plaintiff states that he "believe[s] that the merging of the yard threatens [his] safety" because he has "met people [who] came from … merged yards that were victimized." (Pl.'s Decl., ECF No. 1 at 17.) Plaintiff further states that he has "worked hard to come down to [a] Level 1 with zero points," and fears that should Defendants' "experimental program" be forced upon him, and he "refuse[s] to be a part of it," he may face the potential "consequence of a serious 115 (disciplinary rules violation), additional time, loss of familial connection due to placement in administrative segregation, and potential loss of good time credits." (*Id.* at 16-17.) Plaintiff's wife Ruthie declares she fears the same, and has worked to organize with other families at

Avenal State Prison and the Youth Justice Coalition, to petition and rally against the CDCR's plan for "forced integration." (Ruthie Decl., ECF No. 1 at 18-22.) Ruthie claims she is "most worried about her husband's safety … should he refuse to integrate or be attacked." (*Id.* at 21.) Finally, Plaintiff submits the Declaration of Kim McGill, an Organizer with the Youth Justice Coalition, describing that association's efforts to challenge the CDCR's NDPF implementation efforts. (McGill Decl., ECF No. 1 at 23-27.) McGill believes Ruthie's "leadership role in the family-led effort to challenge CDCR's merging of the yards led Avenal State Prison to move [Plaintiff] suddenly and without cause to [RJD]."[1] (*Id.* at 25.) McGill also notes Plaintiff "is only a few months away from paroling," and that both he and Ruthie worry that the transfer to RJD will "jeopardize his release" based on the "potential for conflicts that can lead to discipline." (*Id.*)

While the Court is sympathetic to Plaintiff's concerns and does not doubt his fears are real, none of these affidavits "clearly show" that he currently faces "immediate and irreparable loss or injury" just because he has been transferred from Avenal to RJD, which has been designated as a NDPF. *See* Fed. R. Civ. P. 65(b)(1); *Winter*, 555 U.S. at 22. Plaintiff contends generally that "violence has occurred" during unspecified past attempts to integrate prison facilities, and "violence and harm … is inherent in placing such prisoners together." (Pl.'s TRO, ECF No. 2 at 2.) But he does not allege, and his

---

[1] McGill's Declaration implies Plaintiff's transfer to RJD was retaliatory, but Plaintiff makes no such claim in his Complaint, or in his TRO. *See Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.,* 810 F.3d 631, 636 (9th Cir. 2015) ("[T]here must be a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint. This requires a sufficient nexus between the claims raised in a motion for injunctive relief and the claims set forth in the underlying complaint itself."); *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) ("Devose's motion is based on new assertions of mistreatment that are entirely different from the claim raised and the relief requested in his inadequate medical treatment lawsuit. Although these new assertions might support additional claims against the same prison officials, they cannot provide the basis for a preliminary injunction in this lawsuit.").

Declarations do not show that has actually *been* assigned to a merged yard pursuant to Defendants' integration policies—he claims only that Defendants have implemented a "*plan* to merge [him] … a GP prisoner with SNY prisoners," *id.,* and he fears the potential for "attacks from other inmates," should he be placed on an integrated yard at RJD. (*Id.*)

Thus, without more, Plaintiff has failed to establish that he currently faces the type of immediate and credible threat of irreparable harm necessary to justify extraordinary injunctive relief at this stage of the case. *See Alliance for the Wild Rockies*, 632 F.3d at 1131 ("Under *Winter*, plaintiff[] must establish that irreparable harm is likely, not just possible."); *Goldie's Bookstore, Inc. v. Superior Court of State of Cal.*, 739 F.2d 466, 472 (9th Cir. 1984) ("Speculative injury does not constitute irreparable injury."); *Rigsby v. State*, No. CV 11-1696-PHX-DGC, 2013 WL 1283778, at *5 (D. Ariz. Mar. 28, 2013) (denying prisoner's TRO based on fear of potential future injury based on past assaults); *Chappell v. Stankorb*, No. 1:11-CV-01425-LJO, 2012 WL 1413889, at *2 (E.D. Cal. Apr. 23, 2012) (denying injunctive relief where prisoner's claims of injury based on current or future housing decisions were nothing "more than speculative."), *report and recommendation adopted*, No. 1:11-CV-01425-LJO, 2012 WL 2839816 (E.D. Cal. July 9, 2012). A presently existing actual threat must be shown, even though injury need not be certain to occur. *See Zenith Radio Corp. v. Hazeltine Research, Inc*., 395 U.S. 100, 130-31 (1969); *FDIC v. Garner*, 125 F.3d 1272, 1279-80 (9th Cir. 1997); *Caribbean Marine*, 844 F.2d at 674.

## V.     Conclusion and Order

For the reasons explained, the Court **DENIES** Plaintiff's Motion for a Temporary Restraining Order (ECF No. 2) without prejudice pursuant to Fed. R. Civ. P. 65(b).

The Court further **DIRECTS** the Clerk of the Court to issue a summons upon the Defendants identified in Plaintiff's Complaint pursuant to Fed. R. Civ. P. 4(b) so that he may execute service upon them as required by Fed. R. Civ. P. 4(c). Plaintiff must effect personal service within 90 days of this Order, and file proof of that service pursuant to

Fed. R. Civ. P. 4(l), or file a waiver pursuant to Fed. R. Civ. P. 4(d) within that time, or face dismissal for failure to prosecute pursuant to Fed. R. Civ. P. 4(m).[2]

**IT IS SO ORDERED**.

Dated: March 15, 2019

_____
Hon. Cathy Ann Bencivengo
United States District Judge

---

[2] Because Plaintiff is not proceeding IFP, he is "responsible for having the summons and complaint served" now that his pleading has survived the sua sponte screening required by 28 U.S.C. § 1915A. *See* Fed. R. Civ. P. 4(c)(1). The Court has tolled Rule 4(m)'s service clock while it conducted that screening. *See Butler v. Nat'l Cmty. Renaissance of California*, 766 F.3d 1191, 1204 n.8 (9th Cir. 2014) (noting that "[o]ther federal circuit courts of appeals have held that the [90]–day service period is tolled until the court screens a plaintiff's in forma pauperis complaint and authorizes service of process") (citing *Robinson v. Clipse*, 602 F.3d 605, 608 (4th Cir. 2010*); Urrutia v. Harrisburg Cnty. Police Dep't*, 91 F.3d 451, 459 (3d Cir. 1996)).

13

3:19-cv-00363-CAB-JLB