XAVIER BECERRA
Attorney General of California
DAMON MCCLAIN
Supervising Deputy Attorney General
MICHELLE DES JARDINS
Supervising Deputy Attorney General
State Bar No. 168079
  600 West Broadway, Suite 1800
  San Diego, CA 92101
  P.O. Box 85266
  San Diego, CA 92186-5266
  Telephone:  (619) 738-9561
  Fax:  (619) 645-2581
  E-mail:  Michelle.DesJardins@doj.ca.gov
*Attorneys for Defendants*
*Rosemary Ndoh, Ralph Diaz, Kathleen*
*Allison, and Patrick Covello*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JOSE MONTALVO,**<br><br>                                  Plaintiff,<br><br>          **v.**<br><br>**RALPH DIAZ, et al.,**<br><br>                                  Defendants. | 3:19-cv-00363 CAB JLB<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:            February 24, 2020<br>Time:            TBD<br>Suite:           5140<br>Judge:          The Honorable Jill L. Burkhardt<br>No Oral Argument Unless Ordered by Court |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

Introduction ...................................................................................................... 1

Allegations ...................................................................................................... 2

Standard on Motion to Dismiss ...................................................................... 3

Legal Argument .............................................................................................. 4

I.    Plaintiff Fails to State a Claim Against Avenal Warden Ndoh. ........... 4

II.   Plaintiff Fails to State a Claim Against Secretary Diaz and Director Allison ................................................................................ 5

III.  Plaintiff Fails to State a Claim Against Donovan Warden Covello ........................................................................................... 9

IV.   Defendants Are Entitled to Qualified Immunity Because It Was Not Clearly Established that Implementing Enhanced Programming Opportunities for Low-level Programming Inmates Violated the Eighth Amendment ............................................... 11

V.    Plaintiff's Request for Declaratory and Injunctive Relief Must Be Dismissed as Moot Because He Is No Longer Incarcerated. ........ 14

VI.   Plaintiff's Claim Against Defendants in Their Official Capacities Is Barred by the Eleventh Amendment and Must Be Dismissed. ....................................................................................... 16

Conclusion ...................................................................................................... 17

i

# TABLE OF AUTHORITIES

**Page**

CASES

*Adarand Constructors, Inc. v. Pena*
515 U.S. 200 (1995) ....................................................................... 15

*Alabama v. Pugh*
438 U.S. 781 (1978) ................................................................... 16, 17

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ..................................................................... 4, 5

*Bell Atlantic Corp. v. Twombly*
550 U.S. 544 (2007) ......................................................................... 4

*Berg v. Klincheloe*
794 F.2d 457 (9th Cir. 1986) ........................................................ 9, 14

*Cano v. Taylor*
739 F.3d 1214 (9th Cir. 2014) .......................................................... 14

*City of Los Angeles v. Lyons*
461 U.S. 95 (1983) ........................................................................ 15

*City of Oklahoma City v. Tuttle*
471 U.S. 808 (1985) ........................................................................ 6

*Clegg v. Cult Awareness Network*
18 F.3d 752 (9th Cir. 1994) ............................................................... 4

*District of Columbia v. Wesby*
138 S. Ct. 577 (2018) ................................................................. 11, 12

*Douglas v. California Dep't of Youth Authority*
271 F.3d 812 (9th Cir. 2001) ........................................................... 16

*Enrico's, Inc. v. Rice*
730 F.2d 1250 (9th Cir. 1984) .......................................................... 15

*Erickson v. Pardus*
551 U.S. 89 (2007) ......................................................................... 4

ii

1
2

## TABLE OF AUTHORITIES
### (continued)

Page

3
4

*Farmer v. Brennan*
    511 U.S. 825 (1994) ................................................................. 6, 14

5
6

*Hans v. Louisiana*
    134 U.S. 1 (1890) ........................................................................ 16

7
8

*Hodgers-Durgin v. Lopez*
    199 F.3d 1037 (9th Cir. 1999) ...................................................... 15

9
10

*Hunter v. Bryant*
    502 U.S. 224 (1991) ..................................................................... 12

11

*Iron Arrow Honor Soc'y v. Heckler*
    464 U.S. 67 (1983) ....................................................................... 14

12
13

*Ivey v. Board of Regents of the University of Alaska*
    673 F.2d 266 (9th Cir. 1982) ...................................................... 4, 6

14
15

*Kisela v. Hughes*
    584 U.S. ___, 138 S. Ct. 1148 (2019) .......................................... 12

16
17

*Knievel v. ESPN*
    393 F.3d 1068 (9th Cir. 2005) ........................................................ 7

18
19

*Leer v. Murphy*
    844 F.2d 628 (9th Cir. 1988) .......................................................... 4

20
21

*Mackinney v. Nielsen*
    69 F.3d 1002 (9th Cir. 1995) .......................................................... 5

22

*Marsh v. County of San Diego*
    680 F.3d 1148 (9th Cir. 2012) ...................................................... 11

23
24

*Mitchell v. Dupnik*
    75 F.3d 517 (9th Cir. 1996) .......................................................... 15

25
26

*Murphy v. Hunt*
    455 U.S. 478 (1982) ..................................................................... 15

27
28

*Navarro v. Block*
    250 F.3d 729 (9th Cir. 2001) .......................................................... 3

iii

# TABLE OF AUTHORITIES
### (continued)

Page

*Pearson v. Callahan*
   555 U.S. 223 (2009) ...................................................................... 11

*Polk County v. Dodson*
   454 U.S. 312 (1981) ........................................................................ 5

*Regents of the University of California v. Doe*
   519 U.S. 425 (1997) ...................................................................... 16

*Riggle v. California*
   577 F.2d 579 (9th Cir. 1978) ......................................................... 16

*Romero v. Kitsap*
   931 F.2d 624 (9th Cir. 1991) ......................................................... 12

*S.B. v. County of San Diego*
   864 F.3d 1010 (9th Cir. 2017) ....................................................... 11

*Thomas v. Ponder*
   611 F.3d 1144 (9th Cir. 2010) ......................................................... 6

*United States v. Ritchie*
   342 F.3d 903 (9th Cir. 2003) ........................................................... 8

*Weinstein v. Bradford*
   423 U.S. 147 (1975) ...................................................................... 14

*Will v. Michigan Dep't of State Police*
   491 U.S. 58 (1989) ....................................................................... 16

*Wilson v. Seiter*
   501 U.S. 294 (1991) ........................................................................ 6

STATUTES

United States Code, Title 42
   § 1983 ............................................................................... 4, 11, 17

California Goverment Code
   §§ 810 et seq. ............................................................................... 16

iv

1
2

# TABLE OF AUTHORITIES
## (continued)

**Page**

3

**CONSTITUTIONAL PROVISIONS**

4

United States Constitution
   Article III ...................................................................................... 14
   Eighth Amendment........................................................... *passim*
   Eleventh Amendment ....................................................................16

5
6
7

8

**COURT RULES**

9

Federal Rule of Civil Procedure
   Rule 8................................................................................................ 4
   Rule 8(a)(2)....................................................................................... 4
   Rule 12(b)(6) ............................................................................... 4, 8

10
11
12

13

**OTHER AUTHORITIES**

14

California Code of Regulations, Title 15,
   § 3375.1(a)(1) & (2) ....................................................................... 7

15
16
17
18
19
20
21
22
23
24
25
26
27
28

v

Notice of Mot. and Mot. to Dismiss; Mem.of P. & A. in Supp. (3:19-cv-00363 CAB JLB)

**TO PLAINTIFF,**

Please take notice that on February 24, 2020, before the Honorable Jill L. Burkhardt, in Suite 5140 in the United States District Court, Southern District of California, located at 221 West Broadway, San Diego, CA 92101 (Edward J. Schwartz courthouse), Defendants Rosemary Ndoh, Ralph Diaz, Kathleen Allison, and Patrick Covello will move to dismiss the Amended Complaint on the grounds that it fails to state a claim under the Eighth Amendment, Defendants are entitled to qualified immunity, Plaintiff's claims for declaratory and injunctive relief are moot, and Plaintiff's claims against Defendants in their official capacities are barred by the Eleventh Amendment.  There will be no oral argument unless ordered by the Court.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, Exhibit 1 thereto, which Defendants ask the Court to incorporate into the Complaint by reference, and the Court's own files in this matter.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiff Jose Montalvo, a parolee,[1] claims that while he was incarcerated in the custody of the California Department of Corrections and Rehabilitation (CDCR), Defendants Secretary of CDCR Diaz and Director Allison authored a departmental memorandum directing the merger of Sensitive Needs Yard (SNY) prisoners with General Population (GP) prisoners in level 1 and level 2 yards. After Plaintiff transferred to Richard J. Donovan Correctional Facility (Donovan) in 2019, he was placed on such a merged facility, called a Non-Designated Programming Facility (NDPF).  As a result, SNY prisoners allegedly attacked him.

---

[1] Plaintiff filed a notice of change of address indicating he is no longer incarcerated.  (ECF No. 10.)

1

1    Plaintiff claims Defendants were deliberately indifferent to his safety in violation of
2    the Eighth Amendment because they should have known that SNY prisoners would
3    attack him if placed in the same housing facility.  Plaintiff seeks damages and an
4    injunction preventing Defendants from merging SNY and GP prisoners in the same
5    facility.

6         Defendants Diaz, Allison, Ndoh, and Covello move to dismiss the Eighth
7    Amendment claim on the grounds that Plaintiff fails to state a claim against them;
8    Defendants are entitled to qualified immunity because it was not clearly established
9    that merging Level 1 and Level 2 GP and SNY inmates in the same housing facility
10   violated the Eighth Amendment; Plaintiff's request for injunctive and declaratory
11   relief is moot because Plaintiff is no longer incarcerated; and his claim against
12   Defendants in their official capacities is barred by the Eleventh Amendment.

13                              **ALLEGATIONS**

14        Plaintiff brings an Eighth Amendment deliberate indifference claim against
15   Ralph Diaz, the Secretary of CDCR; Kathleen Allison, Director of CDCR;
16   Rosemary Ndoh, the Warden of Avenal State Prison; and Patrick Covello, the
17   Warden of Donovan.  (Am. Compl., ECF No. 6, at 2.)  Plaintiff claims that on
18   December 12, 2017, Director Allison authored a department memorandum
19   announcing the "expansion of merging" SNY and GP prisoners in all level 1 and 2
20   yards.  (*Id.* at 3.)  On February 7, 2019, Plaintiff, a GP inmate, was transferred to
21   Donovan to be merged with SNY prisoners.  Plaintiff claims that "[i]t has been long
22   understood by both the Courts and CDCR officials that SNY prisoners cannot
23   safely merge with General Population prisoners.  Each and every time these
24   mergers have taken place intentionally or unintentionally, there has been well
25   documented incidents of violence, primarily as a result of the SNY prisoners
26   attacking GP prisoners forcefully placed on the yard with them."  (*Id.* at 3-4.)
27   Plaintiff thus contends that Defendants were "well aware of" but "completely
28   disregard[ed]" "an excessive risk to Plaintiff's health and safety."  (*Id.* at 4.)

                                      2

1       Plaintiff arrived at Donovan on February 8, 2019, was initially placed in
2 Administrative Segregation, and was later cleared by the captain on February 11,
3 2019, for release to the minimum yard (M yard), level one, which is a "NDPF
4 (merged yard populated by SNY prisoners)." (*Id.*)  On the same day, three
5 prisoners approached Plaintiff and battered him, and then seven to ten more SNY
6 prisoners "joined in." (*Id.*)  Plaintiff allegedly suffered a broken nose, contusions,
7 abrasions, and "slices" on his face and neck.  Plaintiff was then placed back in
8 Administrative Segregation "for his own protection." (*Id.*)

9       On February 13, 2019, Plaintiff was taken back to the NDPF minimum yard,
10 level one, which led to another physical altercation between Plaintiff and a SNY
11 prisoner. (*Id.*)  Plaintiff was then placed back in Administrative Segregation. (*Id.*)
12 On February 22, 2019, Plaintiff was taken to committee, and the counselor and
13 captain present recommended he be transferred to a level 2 GP yard, because he
14 could not safely program on a NDPF yard. (*Id.*)  Plaintiff was returned to
15 Administrative Segregation and on February 28, 2019, was taken to committee
16 again at Correctional Counselor II Cortez's direction. (*Id.*)  At committee,
17 Defendant Warden Covello asked Plaintiff what would happen if they put Plaintiff
18 on E yard (level 2 NDPF). (*Id.* at 4-5.)  Plaintiff responded, "I am a General
19 Population inmate." (*Id.* at 5.)  Warden Covello then allegedly cut Plaintiff off and
20 said, "send him, get him out of here." (*Id.*)  He then asked Plaintiff "how much
21 time do you got to lose?" "We have level three and four yards where you'll go
22 next." (*Id.*)  Plaintiff was then taken back to a different, higher-level NDPF yard
23 and placed in the E-yard building, where he was attacked by three NDPF inmates
24 who were joined by two other NDPF inmates. (*Id.*)

25 **STANDARD ON MOTION TO DISMISS**

26       A motion to dismiss a complaint under Federal Rule of Civil Procedure
27 12(b)(6) tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729,
28 732 (9th Cir. 2001).  A complaint must set forth "a short and plain statement of the

3

claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Dismissal is proper where the complaint does not contain enough factual allegations, when taken as true, to establish "plausible," as opposed to merely "possible" or "speculative," entitlement to relief. *Bell Atlantic Corp.*, 550 U.S. at 555. Although detailed factual allegations are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atlantic Corp.*, 550 U.S. at 555, 557).

In evaluating a motion to dismiss under Rule 12(b)(6), a court must assume the truth of the facts presented and construe all inferences from them in the light most favorable to the nonmoving party. *Erickson*, 551 U.S. at 94. However, courts should not "supply essential elements of the claim that were not initially pled." *Ivey v. Board of Regents of the University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Additionally, courts "are not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

## LEGAL ARGUMENT

### I.   PLAINTIFF FAILS TO STATE A CLAIM AGAINST AVENAL WARDEN NDOH.

To subject a defendant to liability for violation of his constitutional rights under 42 U.S.C. § 1983, a plaintiff must establish what the defendant did to violate his constitutional rights. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).

4

"Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Id.* at 632.  Here, the only allegations against Warden Ndoh are that "Defendant Ndoh is the current Warden at Avenal State Prison.  She is legally responsible for the operations of Avenal State Prison and for the welfare of all the inmates of that prison."  (Am. Compl., ECF No. 6, 2.)  Nowhere does Plaintiff explain how Warden Ndoh is responsible for implementing the NDPF policy he claims put him at risk, or for the injuries he allegedly sustained at Donovan.  Plaintiff therefore fails to state a claim against Warden Ndoh.

## II.   PLAINTIFF FAILS TO STATE A CLAIM AGAINST SECRETARY DIAZ AND DIRECTOR ALLISON.

Plaintiff attempts to hold Defendants Diaz and Allison liable for the injuries he sustained in a NDPF at Donovan because they implemented the policy to merge SNY and GP prisoners in level 1 and level 2 yards in California's prisons. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*.  *Ashcroft v. Iqbal*, 556 U.S. at 676.  Rather, to establish liability, a plaintiff must plead facts showing that each government-official defendant, through the official's own individual actions, has violated the Constitution.  *Ashcroft v. Iqbal*, 556 U.S. at 676.  Liability for policies and practices may exist if supervisory officials implement "a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation."  *Mackinney v. Nielsen*, 69 F.3d 1002, 1008 (9th Cir. 1995) (quoting *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1996)); *see also Polk County v. Dodson*, 454 U.S. 312, 326 (1981). A plaintiff must separately prove fault on the part of the supervisor and an "affirmative link" between the adoption of the policy and a deprivation of his

5

constitutional rights to establish supervisory liability based on a policy that is not unconstitutional on its face. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 820 (1985). Vague and conclusory allegations are insufficient. *Iqbal*, 556 U.S. at 678-79; *Ivey v. Bd. of Regents,* 673 F.2d 266, 268 (9th Cir. 1982).

Here, Plaintiff claims in conclusory terms that Defendants Diaz and Allison were deliberately indifferent to his safety in implementing the NDPF because "it has been long understood by both the Courts and CDCR officials that SNY prisoners cannot safely merge with General Population prisoners. Each and every time these merges have taken place intentionally or unintentionally, there has been well documented incidents of violence, primarily as a result of the SNY prisoners attacking GP prisoners forcefully placed on the yard with them." (Am. Compl., ECF No. 6, 3-4.) These conclusory claims are insufficient to show Defendants Diaz and Allison were deliberately indifference to Plaintiff's – a GP prisoner – safety.

The Eighth Amendment requires prison officials to "'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citations omitted). An inmate seeking to prove an Eighth Amendment violation based on deliberate indifference must objectively show that he was deprived of something sufficiently serious and make a subjective showing that the deprivation occurred with deliberate indifference to the inmate's health or safety. *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) (quoting *Farmer v. Brennan*, 511 U.S. at 834). Because "only the unnecessary and *wanton* infliction of pain implicates the Eighth Amendment," the plaintiff must allege facts showing the defendant acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). This requires that the official "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. The court must consider whether the risk "was sufficiently 'obvious' to the prison officials that

1  they must have been aware of the severity of the deprivation." *Thomas*, 611 F.3d at

2  1151.

3      The inmate must also show "that the prison officials had no 'reasonable'

4  justification for the deprivation, in spite of that risk." *Thomas*, 611 F.3d at 1150

5  (citing *Farmer*, 511 U.S. at 844).  However, prison officials who actually knew of a

6  substantial risk to inmate health or safety may be found free from liability if they

7  responded reasonably to the risk, even if the harm ultimately was not averted."

8  *Farmer*, 511 U.S. at 844.

9      Here, Plaintiff cannot show that it would be obvious to prison officials that

10  creating NDPFs would pose a substantial risk of serious harm, that they had no

11  reasonable justification for creating such yards, or that they failed to respond

12  reasonably to any possible risk.  As Plaintiff mentions, these NDPFs occurred in

13  low-level housing facilities – those facilities housing inmates with low security

14  scores of 0-18 (Level 1) and 19-35 (Level 2).  *See* Cal. Code Regs. Tit. 15, §

15  3375.1(a)(1) & (2).

16      And the December 12, 2017 memo setting forth NDPF expansions, which

17  Plaintiff references in his Complaint, demonstrates the expectation that only

18  inmates who were "programming" and had earned low classification scores would

19  be housed in NDPFs, based on the expectation that they would continue to program

20  peacefully rather than resort to violence.  Defendants attach the December 12, 2017

21  memo as Exhibit 1 to the Motion to Dismiss for incorporation into the Amended

22  Complaint by reference.  This Court may take this memo into account in ruling on

23  the Motion to Dismiss.  Under the "incorporation by reference doctrine," the Court

24  may consider on a motion to dismiss "documents whose contents are alleged in the

25  complaint and whose authenticity no party questions, but which are not physically

26  attached to [the plaintiff's] pleadings." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th

27  Cir. 2005).  A court "may treat such a document as part of the complaint, and thus

28

Notice of Mot. and Mot. to Dismiss; Mem.of P. & A. in Supp. (3:19-cv-00363 CAB JLB)

may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

The December 12, 2017 memo, on which the Amended Complaint relies, shows the reasonable justification for the NDPF facilities:

> The California Department of Corrections and Rehabilitation (CDCR) is committed to expanding incentives to positive programming inmates, in coordination with rehabilitative efforts focused towards preparing individuals for greater personal success and societal integration.  In coordination with various stakeholders, CDCR is expanding efforts to provide robust programming to all inmates and to *safely house individuals in the lowest level possible. . . .*
>
> CDCR's Level I and Level II housing facilities will slowly be transitioned into non-designated PFs [programming facilities], as they currently house a *large inmate population of programming inmates*.  The focus of PFs is *to provide an environment for inmates demonstrating positive programming efforts and a desire not to get involved in the destructive cycles of violence.*  This will allow for greater access to work assignments and programming opportunities with enhanced privileges.

(Ex. 1, Dec.12, 2017 memo, emphasis added.)

Thus, this memo demonstrates that only prisoners proven to be willing to program and to avoid violence would be able to participate in the NDPFs and thereby enjoy greater opportunities for programming and rehabilitation.  This memo also shows CDCR addressed possible risk posed by these NDPFs by advising participating prisoners of programming expectations and that they had been selected based on their positive programming: "Institutions must document in the committee action or reception center classification documents that the inmate was advised of programming expectations and positive programming reasoning for referral to a non-designated PF."  (*Id.* at p. 2.) The inmate's stated preference concerning NDPF placement is then documented.  (*Id.* at p. 2.)  Non-compliant inmates are subject to discipline and potential placement into higher-security-level housing.  (*Id.*)

8

Notice of Mot. and Mot. to Dismiss; Mem.of P. & A. in Supp. (3:19-cv-00363 CAB JLB)

This memo refutes any claim Defendants were deliberately indifferent to inmate safety and shows just the opposite—that Defendants carefully rolled out a new program to low-security-level, programming inmates to help them break the cycle of violence and to prepare them for re-entry into society by providing greater opportunities to program.

This decision is entitled to the Court's deference.  "Protecting the safety of prisoners and staff involves difficult choices and evades easy solutions." *Berg v. Klincheloe*, 794 F.2d 457, 460 (9th Cir. 1986).  "The Supreme Court has stated that deference to the decisions of prison officials also extends to prophylactic or preventive measures intended to reduce the incidence of . . . . breaches of prison discipline." *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312 (1986)).  Because the decision to create NDPFs was based on reasonable penological objectives of enhancing prisoner rehabilitation, was made only after careful consideration of risk factors, and included reasonable measures to mitigate such risks, such as the selection of only low-level, programming prisoners, Defendants were not deliberately indifferent.

## III.  PLAINTIFF FAILS TO STATE A CLAIM AGAINST DONOVAN WARDEN COVELLO.

Plaintiff claims a captain at Donovan cleared him for placement in minimum yard, level one, a NDPF.  (Am. Compl., ECF No. 6, 4.)  He was attacked the day he was released to this yard.  (*Id.*)  Plaintiff was then taken to administrative segregation for his own safety, but released back to the minimum yard two days later.  (*Id.*)  This "led to another physical altercation between Plaintiff and a NDPF (SNY) prisoner."  (*Id.*)  Plaintiff was again returned to administrative segregation.  Plaintiff was taken to committee on February 22, 2019, where the counselor and captain present recommended Plaintiff be transferred to a GP yard, level 2 because he could not safely program on a NDPF yard.  Plaintiff returned to administrative segregation after committee.  On February 28, 2019, he was again taken to committee.  Warden

9

1    Covello participated in the committee and asked him "what would happen if I put
2    you on E yard (level 2 NDPF yard)?"  Plaintiff responded, "I am a General Population
3    inmate," at which Warden Covello stated, "send him, get him out of here." (*Id.* at 5.)
4    Defendant Covello also asked Plaintiff:  "how much time do you got to lose?"  "We
5    have level three and four yards where you'll go next." (*Id.*)  Plaintiff was then taken
6    to the E-Yard building and was immediately involved in another altercation.

7         Warden Covello's actions did not demonstrate deliberate indifference.   As
8    indicated earlier, CDCR implemented the NDPFs to "safely house individuals in the
9    lowest level possible" to maximize rehabilitative efforts, not in wanton indifference
10   to inmate safety. (Ex. 1, Dec. 12, 2017 memo.)  Donovan was included in this policy
11   directive. (*Id.*)  There is no allegation that Warden Covello had anything to do with
12   Plaintiff's initial placement and retention on the minimum yard or that he was aware
13   of Plaintiff's problems on that yard until Plaintiff went to committee on February 28,
14   2019, where Warden Covello was present and asked Plaintiff about his safety
15   concerns.

16        When Warden Covello specifically asked Plaintiff what would happen if he put
17   him on a different yard – E yard, a level two NDPF yard, Plaintiff simply said, "I am
18   a General Population inmate." (Am. Compl., ECF No. 6, 4-5.)  Plaintiff did not
19   indicate that he would resort to violence or that he had any enemy concerns on this
20   new yard.  And Warden Covello did not return Plaintiff to the facility where he had
21   engaged in altercations but sent him to a different higher-level facility.  Warden
22   Covello also advised Plaintiff of the consequences of his refusal to program on the
23   new yard – that he would suffer possible credit loss or placement in higher level
24   housing.  These allegations show Warden Covello complied with CDCR's directives
25   set forth in the December 12, 2017 memo.  He sought to address any potential risk of
26   placing Plaintiff on another NDPF by moving him to a different, higher level NDPF
27   and by asking Plaintiff about what Plaintiff felt the consequences of that move would
28   be.  But Plaintiff voiced no safety concerns, stating only that he was a GP inmate.

Because Warden Covello acted reasonably and in accordance with the CDCR directive concerning NDPFs, he was not deliberately indifferent.

### IV. DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY BECAUSE IT WAS NOT CLEARLY ESTABLISHED THAT IMPLEMENTING ENHANCED PROGRAMMING OPPORTUNITIES FOR LOW-LEVEL PROGRAMMING INMATES VIOLATED THE EIGHTH AMENDMENT.

"[O]fficers are entitled to qualified immunity under § 1983 unless (1) they violated a federal or statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby,* ___ U.S. ___, 138 S. Ct. 577, 589 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)); *see also S.B. v. County of San Diego*, 864 F.3d 1010, 1015 (9th Cir. 2017). A plaintiff must prove both prongs of this inquiry to establish that an official is not entitled to qualified immunity. *Marsh v. County of San Diego*, 680 F.3d 1148, 1152 (9th Cir. 2012). The court may address these questions in the order most appropriate to the circumstances of the particular case at hand. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Here, Plaintiff can establish neither prong of this inquiry, and Defendants are entitled to qualified immunity.

Defendants are entitled to qualified immunity because they did not violate the Eighth Amendment. As explained earlier, there are no allegations against Avenal State Prison Warden Ndoh, and Plaintiff fails to show Defendants Diaz and Allison were deliberately indifferent to Plaintiff's safety when they implemented NDPFs for low-level inmates who had demonstrated a willingness to peacefully program. Nor was Warden Covello deliberately indifferent in following CDCR's NDPF directive or in moving Plaintiff to a higher-level NDPF after Plaintiff voiced no enemy concerns in that facility.   Thus, under the first prong of the qualified immunity inquiry, Defendants are entitled to qualified immunity.

But even if Defendants' actions were found to have violated Plaintiff's Eighth Amendment rights, Defendants are entitled to qualified immunity because it was not clearly established that their actions were unconstitutional. Under the second

11

prong of the qualified immunity analysis, the unlawfulness of official conduct is "clearly established" if, "at the time of the officer's conduct, the law was 'sufficiently clear' that 'every reasonable official would understand that what he is doing' is unlawful." *Wesby,* 138 S. Ct. at 589 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). "In other words, existing law must have placed the constitutionality of the officer's conduct 'beyond debate.'" *Wesby,* 138 S. Ct. at 589 (quoting *al-Kidd,* at 741).

"To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be 'settled law,' *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991) (*per curiam*), which means it is dictated by 'controlling authority' or 'a robust "consensus of cases of persuasive authority,"'" *Wesby,* 138 S. Ct. at 589-90 (quoting *al-Kidd*, at 741-42) (quoting *Wilson v. Layne,* 526 U.S. 603, 617 (1999)). "The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Wesby*, 138 S. Ct. at 590.

"The 'clearly established' standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Wesby*, 138 S. Ct. at 590 (quoting *Saucier v. Katz,* 533 U.S. 194, 202 (2001)). "An officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.'" *Kisela v. Hughes*, 584 U.S. ___, 138 S. Ct. 1148, 1153 (2019). Therefore, regardless of whether the constitutional violation occurred, the officer should prevail if the right asserted by the plaintiff was not clearly established or the officer could have reasonably believed that his particular conduct was lawful. *Romero v. Kitsap*, 931 F.2d 624, 627 (9th Cir. 1991).

There is no case law holding that housing together low-security-level inmates who have demonstrated a willingness to peacefully program violates the Eighth Amendment.  Indeed, the December 12, 2017 memo shows that inmates placed in NDPFs are selected based on their low-risk classification with the intention of providing a greater opportunity to program and rehabilitate for "greater personal success and societal integration."  (Dec. 12, 2017 memo.)  And any potential risk posed by such NDPFs is addressed by choosing low-security-level, programming inmates, explaining the program and expectations, and asking inmates whether they agreed with their assignment to a NDPF.  Non-compliant inmates are subject to the disciplinary process and potential placement in higher-level housing, thus further reducing any risk posed by non-compliant inmates.  Plaintiff can point to no case where the Ninth Circuit or Supreme Court has found deliberate indifference in such a circumstance.  Thus, it is not clearly established that NDPF facilities violate the Eighth Amendment.

Nor is there a case on point addressing Warden Covello's actions.  After Plaintiff was involved in altercations on the Mimimum Yard, Warden Covello considered moving Plaintiff to a different, higher-level facility – Facility E.  Before Officer Covello did so, he asked Plaintiff during a classification committee what would happen if Plaintiff was placed on this new yard.  Plaintiff did not indicate he had enemy concerns on the new facility, stating only that he was a GP prisoner.

Plaintiff can point to no case where such circumstances demonstrate deliberate indifference.  Indeed, as the Supreme Court and Ninth Circuit have recognized, prison officials face tremendous challenges in safely operating prisons and are entitled to the courts' deference concerning the difficult decisions they must make.  As the Supreme Court has recognized, "prisons by definition, are places of involuntary confinement of persons who have demonstrated proclivity for antisocial, criminal, and often violent conduct." *Hudson*, 468 U.S. 517, 526 (1984).  Many prisoners are unpredictable.  The prison setting is, at best, tense.  It is

13

1   sometimes explosive, and always potentially dangerous. *Berg v Kincheloe*, 794

2   F.2d at 461. "Choosing the optimal 'prophylactic or preventive measures' to

3   prevent violence and maintain safety is difficult and not readily susceptible to

4   judicial evaluation." *Id.* (citations omitted).

5        Here, Warden Covello did what he could to both comply with CDCR's NDPF

6   directive and to ensure Plaintiff's safe housing. Unfortunately, his efforts did not

7   prevent Plaintiff from being involved in another altercation. But this does not

8   establish deliberate indifference (*Farmer*, 511 U.S. at 844), and Warden Covello

9   had no reason to believe his actions would violate the Constitution. He is therefore

10   entitled to qualified immunity.

11   **V.   PLAINTIFF'S REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF MUST BE DISMISSED AS MOOT BECAUSE HE IS NO LONGER INCARCERATED.**

12

13        Plaintiff seeks a declaratory judgment that Defendants' actions violate the

14   Eighth Amendment. He also requests that the Court issue a temporary restraining

15   order, a preliminary injunction, and a permanent injunction enjoining Defendants

16   and their successors from merging SNY and GP prisoners together in NDPFs.

17   Because Plaintiff has been released from prison (ECF No. 10), his request for

18   declaratory and injunctive relief is moot and must be dismissed. *Weinstein v.*

19   *Bradford*, 423 U.S. 147 (1975) (per curiam) (when an inmate seeks injunctive relief

20   concerning conditions related to his incarceration, his claims for such relief become

21   moot when he is no longer subjected to those conditions); *see also Cano v. Taylor,*

22   739 F.3d 1214, 1221 (9th Cir. 2014) (holding "plaintiff's [r]equests for injunctive

23   and declaratory relief are mooted by his release from prison").

24        To invoke the jurisdiction of the federal courts, Article III of the Constitution

25   requires the existence of a pending "case or controversy." U.S. Const. art. III. To

26   satisfy the case-or-controversy requirement, a litigant must have suffered an injury

27   that can be redressed by a favorable judicial decision. *Iron Arrow Honor Soc'y v.*

28   *Heckler*, 464 U.S. 67, 70 (1983) (per curiam). Where the court can no longer grant

14

1  effective relief, the court lacks jurisdiction and must dismiss the case as moot.  *See*

2  *Enrico's, Inc. v. Rice*, 730 F.2d 1250, 1254 (9th Cir. 1984).

3       Questions of mootness are determined in light of the present circumstances.

4  *Mitchell v. Dupnik*, 75 F.3d 517, 528 (9th Cir. 1996).  Although a past injury may

5  afford a plaintiff standing to claim damages, it "does nothing to establish a real and

6  immediate threat that he would again suffer similar injury in the future." *Adarand*

7  *Constructors, Inc. v. Pena*, 515 U.S. 200, 210-11 (1995).  And "absent a threat of

8  immediate and irreparable harm, the federal courts should not enjoin a state to

9  conduct its business in a particular way." *Hodgers-Durgin v. Lopez*, 199 F.3d

10  1037, 1042 (9th Cir. 1999).

11       An exception to this mootness rule is a situation where the alleged violation is

12  capable of repetition, yet evading review. *Weinstein v. Bradford,* 423 U.S. at 149.

13  The exception applies only where:  (1) the challenged action was too short in

14  duration to be fully litigated before its cessation or expiration, or (2) there is a

15  reasonable expectation that the same complaining party would be subject to the

16  same action again. *Murphy v. Hunt*, 455 U.S. 478, 482 (1982).  A plaintiff must

17  demonstrate that the threat of reoccurrence is a real, rather than a speculative,

18  possibility. *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983).

19       Here, Plaintiff filed a notice of change of address indicating he is no longer

20  incarcerated and therefore no longer subject the alleged risks he faced in the NDPF.

21  The challenged action – the creation of and his placement in NDPF—is not of such

22  a short duration that it would escape judicial review.  Nor is there a reasonable

23  expectation that Plaintiff would again face incarceration and placement in a NDPF

24  since if he were reincarcerated, his classification and security designation would

25  likely change.  Accordingly, Plaintiff's request for declaratory and injunctive relief

26  is moot.

27  ///

28  ///

Notice of Mot. and Mot. to Dismiss; Mem.of P. & A. in Supp. (3:19-cv-00363 CAB JLB)

## VI. PLAINTIFF'S CLAIM AGAINST DEFENDANTS IN THEIR OFFICIAL CAPACITIES IS BARRED BY THE ELEVENTH AMENDMENT AND MUST BE DISMISSED.

The Eleventh Amendment bars suits against states and their agencies and departments. *Hans v. Louisiana*, 134 U.S. 1, 15 (1890); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (suit against a state and its Board of Corrections is barred by the Eleventh Amendment).  It also bars suit against state officials sued in their official capacity because a suit against a state official in his official capacity is considered a suit against the state itself. *Regents of the University of California v. Doe*, 519 U.S. 425, 429 (1997).  Federal courts recognize three exceptions to this general rule. *Douglas v. California Dep't of Youth Authority*, 271 F.3d 812, 817-818 (9th Cir. 2001).  First, a state may waive its Eleventh Amendment immunity. *Id.*  Second, Congress may abrogate the states' sovereign immunity by acting pursuant to a grant of constitutional authority. *Id.*  Third, the Eleventh Amendment does not bar a suit against individual state officials if that suit seeks prospective injunctive relief. *Id.* None of these exceptions apply here.

First, California has not waived its Eleventh Amendment defense to suit in federal court.  California's consent to be sued is specified and limited by statute under the California Government Claims Act.  Cal. Gov't Code §§ 810 et seq.  This Act permits suit in the State's own courts under specific circumstances.  It does not impart the State's consent to be sued in federal court. *Riggle v. California*, 577 F.2d 579, 585-86 (9th Cir. 1978).

Second, Congress has not exercised its power to override California's immunity under Section 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65-71 (1989).  Section 1983 provides in pertinent part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

16

42 U.S.C. § 1983. The United States Supreme Court has held that states and state entities are not "persons" within the meaning of Section 1983, and therefore cannot be sued under that statute. *Will v. Michigan Dep't of State Police*, 491 U.S. at 70 (neither the state nor "arms of the state" are "persons" under § 1983); *Alabama v. Pugh*, 438 U.S. at 782.

Thus, the claims for injunctive and declaratory relief must be dismissed as moot. Therefore, no exception to Eleventh Amendment immunity remains, and the claims against Defendants in their official capacities must be dismissed.

## CONCLUSION

The Court should dismiss the Amended Complaint because it fails to state a claim against Defendants, Defendants are entitled to qualified immunity, Plaintiff's request for declaratory and injunctive relief is moot, and his claims against Defendants in their official capacities are barred by the Eleventh Amendment.

Dated: December 18, 2019        Respectfully Submitted,

XAVIER BECERRA
Attorney General of California
DAMON MCCLAIN
Supervising Deputy Attorney General

*/s/ Michelle Des Jardins*

MICHELLE DES JARDINS
Supervising Deputy Attorney General
*Attorneys for Defendants
Rosemary Ndoh, Ralph Diaz,
Kathleen Allison, and Patrick Covello*

SA2019102329
72069904.docx

17

# EXHIBIT 1

State of California                                        Department of Corrections and Rehabilitation

# Memorandum

Date : December 12, 2017

To : Associate Directors, Division of Adult Institutions
     Wardens
     Classification Staff Representatives
     Classification and Parole Representatives
     Correctional Counselors III, Reception Centers

### Subject: NON-DESIGNATED PROGRAMMING FACILITY EXPANSIONS FOR 2018

The California Department of Corrections and Rehabilitation (CDCR) is committed to expanding incentives to positive programming inmates, in coordination with rehabilitative efforts focused towards preparing individuals for greater personal success and societal integration. In coordination with various stakeholders, CDCR is expanding efforts to provide robust programming to all inmates and to safely house individuals in the lowest level possible.

It is the goal of CDCR to continue implementation of non-designated Programming Facilities (PFs) (i.e., facilities that do not identify as Sensitive Needs Yard [SNY] or General Population). CDCR's Level I and Level II housing facilities will slowly be transitioned into non-designated PFs, as they currently house a large population of programming inmates. The focus of PFs is to provide an environment for inmates demonstrating positive programming efforts and a desire to not get involved in the destructive cycles of violence. These will allow for greater access to work assignments and programming opportunities with enhanced privileges.

Based on the successful integration of the Level II PFs located at Richard J. Donovan Correctional Facility and California Health Care Facility, CDCR is expanding placement opportunities.

The below institutions or housing facilities are scheduled to be non-designated PF.

### February 2018
- California Institution for Men, Facility D, Secure Level I, and Firehouse

### April 2018
- California Correctional Institution, Facility E, Secure Level I, and Firehouse
- California Medical Facility (All Institution)

### May 2018
- All Institutional Firehouses, with exception of prior and October activations
- All Minimum Support Facilities (MSFs), with exception of prior and October activations

Associate Directors, Division of Adult Institutions
Wardens
Classification Staff Representatives
Classification and Parole Representatives
Correctional Counselors III, Reception Centers
Page 2

**October 2018**
- California Correctional Center, Facility A, Secure Level I; Facility B, Level II; MSF, and Firehouse
- Sierra Conservation Center, Facility A, Secure Level I; Facility B, Level II; and Firehouse
- California Men's Colony, Facility E, F, G, Level II; and MSF
- California Rehabilitation Center (All Institution)
- Camps

Institutions must document in the committee action or reception center classification documents that the inmate was advised of programming expectations and positive programming reasoning for referral to a non-designated PF. The inmate's stated preference, and his agreement or disagreement, shall be documented. Transfers into a non-designated PF will not require a CDCR Form 128-B, *General Chrono*, waiving prior SNY designation or willingness to program.

Inmates non-compliant with transfer and/or housing placement recommendations shall be subject to the departmental disciplinary process and potential placement into higher level housing.

If you have any questions, please contact Julie Garry, Correctional Captain, PMU, at (916) 323-3659.

KATHLEEN ALLISON
Director
Division of Adult Institutions

cc:  Scott Kernan       Charles Pattillo        John Herrera
     Ralph M. Diaz       Connie Gipson          Brian Moak
     Diana Toche         Jeff Macomber          Heidi Lackner
     Bryan Beyer         Jennifer Barretto      Julie Garry
     Deborah Hysen       Chief Executive Officers
     Sara Malone         Dennis Halverson

# CERTIFICATE OF SERVICE

Case Name:   **Jose Montalvo v. Diaz, et al.**   No.   **3:19-cv-00363 CAB JLB**

I hereby certify that on <u>December 18, 2019</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business.

I further certify that some of the participants in the case are not registered CM/ECF users. On <u>December 18, 2019</u>, I have caused to be mailed in the Office of the Attorney General's internal mail system, the foregoing document(s) by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within three (3) calendar days to the following non-CM/ECF participants:

Jose M. Montalvo Jr.
CDCR No. P60879
2410 Herndon Avenue #104
Clovis, CA 93611-8956
*Pro Per*

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>December 18, 2019</u>, at San Diego, California.

|   |   |
|---|---|
| T. Huckstep | _T. Huckstep_ |
| Declarant | Signature |

SA2019102329
72080649.docx