1
2
3
4
5
6
7
8               UNITED STATES DISTRICT COURT

9               SOUTHERN DISTRICT OF CALIFORNIA

10

11   JOSE MONTALVO,                          Case No.:  3:19-cv-00363-CAB-JLB
     CDCR #P-60879,
12                                           **ORDER:**
                             Plaintiff,
13                                           **GRANTING DEFENDANTS'**
                vs.                          **MOTION TO DISMISS**
14                                           **PLAINTIFF'S FIRST AMENDED**
                                             **COMPLAINT [ECF No. 18]**
15
16   RALPH    DIAZ,    CDCR    Secretary;
     KATHLEEN ALLISON, CDCR Director;
17   ROSEMARY NDOH, CDCR Avenal State
     Prison    Warden;    and    PATRICK
18   COVELLO,  RJ Donovan State Prison
     Warden,
19
                             Defendants.
20

21

22        Jose Montalvo, ("Plaintiff"), a parolee formerly incarcerated at Avenal State Prison,

23   Richard J. Donovan Correctional Facility ("RJD"), and California City Correctional

24   Facility is proceeding pro se in this civil rights action pursuant to 42 U.S.C. Section 1983.

25   (ECF No. 6, FAC; *see also* ECF No. 10 (notice of change of address indicating Plaintiff is

26   no longer incarcerated).)  Plaintiff alleges that Defendants, officials from the California

27   Department of Corrections and Rehabilitation ("CDCR") and the wardens of Avenal and

28   RJD, violated Plaintiff's Eighth Amendment rights by integrating sensitive needs and

                                          1

general population prisoners into merged yards, referred to by the CDCR as "non-designated programming facilities." (*See* FAC at 3-4.) Plaintiff, who was formerly classified as a general population inmate, argues that this policy change exposed him to an unreasonable risk of physical violence at the hands of sensitive needs prisoners, who Plaintiff alleges attacked him on several occasions in merged yards at RJD in early 2019. (*See id.* at 3-5.)

Currently before the Court is Defendants' Motion to Dismiss Plaintiff's First Amended Complaint. (*See* ECF No. 18.) Defendants assert that Plaintiff fails to state a claim upon which relief may be granted or, alternatively, that Plaintiff's claims are barred by qualified immunity. (*See generally id.*) Plaintiff has filed an Opposition and Defendants have filed a Reply. (ECF Nos. 23, 24.) Having carefully considered Defendants' Motion, Plaintiff's First Amended Complaint, and his Opposition, the Court **GRANTS** Defendant's Motion to Dismiss Plaintiff's First Amended Complaint with leave to amend.

## I.    Plaintiff's Allegations

Plaintiff claims that on December 12, 2017, Defendant Kathleen Allison, the Director of the CDCR's Division of Adult Institutions, authored a "department memorandum" announcing an "expansion of the merging of the SNY (Sensitive Needs Yard/previously called Protective Custody) prisoners with General Population Prisoners in all level 1 and 2 yards." (FAC at 3.) Defendants' Motion attaches this memorandum, which is incorporated by reference in Plaintiff's pleadings.[1] (*See* ECF No. 18, at Ex. 1.) The memorandum states that these changes were being adopted "to provide robust programming to all inmates and to safely house individuals in the lowest level possible."

---

[1] Because this document is incorporated by reference in Plaintiff's First Amended Complaint, *see* FAC at 3, the Court may consider it in deciding Defendants' Motion. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (explaining that at the motion to dismiss stage courts may consider "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to [the plaintiff's] pleadings"). The application of the incorporation by reference doctrine is discussed more fully in Section III.B., below.

(*See id.*)  With this goal in mind, the memorandum explains that "CDCR's Level I and Level II housing facilities will slowly be transitioned into non-designated [programming facilities], as they currently house a large inmate population of programming inmates [sic]. The focus of [programming facilities] is to provide an environment for inmates demonstrating positive programming efforts and a desire not to get involved in the destructive cycles of violence." (*Id.*)  On September 10, 2018, Plaintiff alleges that Allison and Defendant Ralph Diaz, the Secretary of the CDCR, authored a different "CDCR departmental memorandum which sets forth the schedule for said merging [of] the yards," and explained that "all such facilities will be merged."  (FAC at 3.)  According to Plaintiff, "[i]t has been long understood by both the Courts and CDCR officials that [sensitive needs] prisoners cannot safely merge with General Population prisoners," and that when such mergers have taken place, "there ha[ve] been well documented incidents of violence, primarily as the result of [sensitive needs] prisoners attacking [general population] prisoners forcefully placed on the yard with them."  (*See id.* at 3-4.)

In early 2019, Plaintiff was transferred to RJD and shortly thereafter was "cleared by the Captain for release to the minimum yard (M yard), level one, which is" a non-designated programming facility, or "merged yard populated by [sensitive needs] prisoners . . . ."  (*Id.* at 4.)  That day, February 11, 2019, Plaintiff alleges that he was attacked by a number of sensitive needs inmates, and "Plaintiff suffered a broken nose, contusions, abrasions and slices on his face and neck."  (*See id.*)  After 48 hours in administrative segregation "'for his own protection,'" Plaintiff was taken back to the M Yard, "which led to another physical altercation between Plaintiff and a [non-designated programming facility/sensitive needs yard] prisoner."  (*Id.* (internal quotation marks in original).)  Plaintiff was returned to administrative segregation after the second incident, before being "taken to committee" nine days later.  (*See id.*)  During the committee meeting a counselor and captain recommended that Plaintiff be transferred to a general population yard, "as he could not safely program on a[] [non-designated programming facility] yard."  (*Id.*)  Plaintiff was not immediately transferred to a general population yard, however, and

he was "taken to committee again," this time before Defendant Patrick Covello, the Warden of RJD.  (*Id.*)  Covello asked Plaintiff "'what would happen if I put you on E yard (level 2 [non-designated programming facility] yard)?'"  (*Id.* at 4-5.)  When Plaintiff responded that he was "'a General Population inmate,'" Covello "cut the Plaintiff off and snapped and said 'send him, get him out of here[.]'"  (*Id.* at 5 (internal quotations marks in original).)  Covello then asked Plaintiff "'how much time do you got to lose?' stating: 'We have level three and four yards where you'll go next[.]'"  (*Id.*)  Subsequently, Plaintiff was taken to E Yard, a non-designated programming facility.  (*See id.*)  Once there, Plaintiff was "immediately involved in another altercation" with a sensitive needs prisoner, and then "jumped by the other two [sensitive needs] inmates simultaneously."  (*See id.* at 5.)

Plaintiff alleges that Defendants, in both their individual and official capacities, violated the Eighth Amendment by acting with deliberate indifference to Plaintiff's safety.  (*See id.* at 3, 5.)  Plaintiff seeks declaratory and injunctive relief enjoining Defendants "from merging the [sensitive needs yard] and [general population] prisoners" into non-designated programming facilities, and declaring that "Defendants actions . . . violate[d] the Plaintiff's Eight[h] Amendment right[s] . . . and constitute[d] deliberate indifference to Plaintiff's health and safety."  (*See id.* at 6.)  Additionally, Plaintiff seeks "$75,000 [in] compensatory damages from each Defendant and $100,000 in punitive damages from each Defendant" as well as attorneys' fees and costs.  (*See id.*)

## II.    Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted."  A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001); *Bryan v. City of Carlsbad*, 207 F. Supp. 3d 1107, 1114 (S.D. Cal. Mar. 20, 2018).

Because Rule 12(b)(6) focuses on the "sufficiency" of a claim rather than the claim's substantive merits, "a court may [ordinarily] look only at the face of the complaint to decide a motion to dismiss," *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th

Cir. 2002), including the exhibits attached to it. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citing *Amfac Mortg. Corp. v. Ariz. Mall of Tempe, Inc.*, 583 F.2d 426 (9th Cir. 1978) ("[M]aterial which is properly submitted as part of the complaint may be considered" in ruling on a Rule 12(b)(6) motion to dismiss.) However, exhibits that contradict the claims in a complaint may fatally undermine the complaint's allegations. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (a plaintiff can "plead himself out of a claim by including . . . details contrary to his claims.") (citing *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998) (courts "are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint.'")); *see also Nat'l Assoc. for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000) (courts "may consider facts contained in documents attached to the complaint" to determining whether the complaint states a claim for relief).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Villa v. Maricopa Cnty.*, 865 F.3d 1224, 1228-29 (9th Cir. 2017). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility requires pleading facts, as opposed to conclusory allegations or the "formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555, which rise above the mere conceivability or possibility of unlawful conduct. *Iqbal*, 556 U.S. at 678-79; *Somers v. Apple, Inc.*, 729 F.3d 953, 959-60 (9th Cir. 2013). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. While a pleading "does not require 'detailed factual allegations,'" Rule 8 nevertheless "demands more than an unadorned, the defendant-

unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Therefore, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citation and quotes omitted); *accord Lacey v. Maricopa Cnty.*, 693 F.3d 896, 911 (9th Cir. 2012) (en banc). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences [drawn] from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

## III. Discussion

To state a claim under 42 U.S.C. Section 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Naffe v. Frye*, 789 F.3d 1030, 1035-36 (9th Cir. 2015).

Plaintiff focuses his claims on alleged violations of the Eighth Amendment, specifically CDCR and prison officials' "failure to protect" Plaintiff from the danger he argues is inherent in merging sensitive needs and general population inmates. (*See* FAC at 3-5.) "'[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners.'" *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)). "The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation when: (1) the deprivation is 'objectively, sufficiently serious' and (2) the prison officials had a 'sufficiently culpable state of mind,' acting with deliberate indifference." *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005) (quoting *Farmer*, 511 U.S. at 834). The second prong of this test is subjective, and "the official must both

6

be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *See Farmer*, 511 U.S. at 837. "'Deliberate indifference entails something more than mere negligence but is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Hearns*, 413 F.3d at 1040 (quoting *Farmer*, 511 U.S. at 835) (internal alterations omitted)). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under [the Supreme Court's] cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

### A.   Defendant Ndoh

Aside from identifying Defendant Rosemary Ndoh as "the current Warden at Avenal State Prison," who is "responsible for the operations of [the prison] and for the welfare of all the inmates of that prison," Plaintiff's First Amended Complaint contains no allegations that Defendant Ndoh violated Plaintiff's constitutional rights.  (*See* FAC at 2.)  Plaintiff concedes this is grounds for dismissal, (*see* ECF No. 23, at 5), and the Court agrees.  *See Iqbal*, 556 U.S. at 678.  Defendants' Motion to Dismiss the claim against Defendant Ndoh is **GRANTED**.

### B.   Defendants Diaz and Allison

The First Amended Complaint alleges that Defendant Allison authored the December 12, 2017 memorandum "announcing the expansion of the merging of [sensitive needs yard] prisoners with the General Population Prisoners in all level 1 and 2 yards." (*See* FAC at 3.)  Additionally, Plaintiff contends that Defendants Diaz and Allison wrote a subsequent "CDCR departmental memorandum which sets forth the schedule for said merging the yards."  (*See id.*)  Plaintiff asserts that these actions were deliberately indifferent to the safety of Plaintiff and other general population inmates because "[i]t has been long understood by both the Courts and CDCR officials that [sensitive needs] prisoners cannot safely merge with General Population prisoners.  Each and every time these merge[r]s have taken place intentionally or unintentionally, there ha[ve] been well

documented incidents of violence, primarily as the result of the [sensitive needs] prisoners attacking [general population] prisoners forcefully placed on the yard with them." (*See id.* at 3-4.)

Defendants argue that these allegations are conclusory, and therefore fail to state a claim of deliberate indifference on the part of Diaz or Allison. (*See* ECF No. 18, at 11-12.) This argument takes two forms. First, Defendants contend that Plaintiff's allegations, taken as true, do not sufficiently allege "that it would be obvious to prison officials that creating [non-designated programming facilities] would pose a substantial risk of serious harm, that they had no reasonable justification for creating such yards, or that they failed to respond reasonably to any possible risk." (*See id.* at 13.) Second, Defendants ask that the Court apply the "incorporation by reference" doctrine, and review the contents of Diaz and Allison's December 12, 2017 memo explaining the planned expansion of merged yards. (*See id.* at 13-15.) Defendants argue that the memo "refutes any claim [that] Defendants were deliberately indifferent to inmate safety and shows just the opposite—that Defendants carefully rolled out a new program to low-security-level, programming inmates to help them break the cycle of violence and to prepare them for re-entry into society by providing greater opportunities to program." (*See id.* at 15.)

Plaintiff's response to these arguments is largely confined to the Declaration of Ruthie Montalvo, which Plaintiff attaches to his opposition brief. Ms. Montalvo states that she is the "former Inmate Family Council Chairperson at Avenal State Prison . . . ." (*See* ECF No. 23, at 9.) In that capacity, Ms. Montalvo learned of the planned merger of sensitive needs and general population prisoners into non-designated programming facilities through a meeting with an official at Avenal in March 2018. (*See id.*) Montalvo then recounts, based "[u]pon further research," the lengthy history of the CDCR's efforts to create and expand non-designated programming facilities, citing to numerous memoranda authored by Defendants Diaz, Allison, or other non-party CDCR officials about the details of CDCR's work. (*See id.* at 10-13.) Montalvo also discusses numerous riots, rule violations, and other violent incidents associated with the implementation of non-

designated programming facilities.  (*See id.* at 13-16.)  Notably, Montalvo describes two meetings with Defendant Diaz in which she and other family members and prison advocates shared stories about violence and other risks in non-designated programming facilities.  (*See id.* at 17-18.)  Although Diaz allegedly stated at the conclusion of the first meeting that the efforts to merge yards would be "on a 'hiatus,'" Montalvo asserts "that was a lie as the implementation and violence connected to [non-designated programming facilities] continued."  (*See id.* at 18.)  At the second meeting, family members also pointed to, among other things, a Facebook group including CDCR staff who "speak[] proudly of the riots or act[s] of violence caused by the bloodshed of [non-designated programming facilities] . . . ."  (*See id.*)

Plaintiff argues that Defendants "have . . . submitted documentary exhibits in [support of their motion] which the court must now ignore . . . or convert their motion into a motion for summary judgment . . . ."  (*See id.* at 6 (citing Fed. R. Civ. P. 12(d)).)  Plaintiff is correct that "[a]s a general rule, 'a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.'"  *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).  Courts may, however, "consider materials incorporated into the complaint or matters of public record."  *Coto Settlement v. Eiseneberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (citing *Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007); Fed. R. Civ. P. 12(d)).  Although "the mere mention of the existence of a document" does not incorporate it by reference, the Ninth Circuit has explained that a document is incorporated by reference if "the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance."  *See id.* (collecting cases).  If a document is incorporated by reference in the complaint, a court may consider that document in ruling on a motion to dismiss without first converting the motion to dismiss into a motion for summary judgment under Rule 12(d).  *See, e.g.*, *Superior Consulting Servs., Inc. v. Steeves-Kiss*, 786 F. App'x 648, 651 (9th Cir. 2019).

Defendant Allison's December 12, 2017 departmental memorandum regarding the

expansion of non-designated programming facilities is incorporated by reference in Plaintiff's First Amended Complaint and is appropriately considered in ruling on Defendants' Motion to Dismiss.  The contents of the memorandum are alleged at length in Plaintiff's pleading, which uses the memorandum to demonstrate the CDCR's plans to expand non-designated programming facilities and the involvement of Defendant Allison in those efforts.  (*See* FAC at 3.)  The parties also clearly agree that the memorandum is relevant to the issues in the case, and Plaintiff does not dispute that the copy attached to Defendants' Motion is authentic.  As a result, the Court need not convert Defendants' Motion to Dismiss into a motion for summary judgment in order to consider the contents of the memorandum.  *See Superior Consulting*, 786 F. App'x at 651.  The same is not true, however, of the Montalvo Declaration attached to Plaintiff's opposition brief, which recounts numerous matters outside the scope of Plaintiff's First Amended Complaint.  "Courts regularly decline to consider declarations and exhibits submitted in support of or opposition to a motion to dismiss . . . if they constitute evidence not referenced in the complaint or not a proper subject of judicial notice."  *See Gerritsen v. Warner Bros. Entm't*, 112 F. Supp. 3d 1011, 1021 (C.D. Cal. 2015).  Accordingly, the Court would be required to convert Defendants' Motion into a motion for summary judgment in order to consider the Montalvo Declaration.  The Court declines to do so, however, because at this stage the parties have not had "a reasonable opportunity to present all the material that is pertinent to [a summary judgment] motion."  *See* Fed. R. Civ. P. 12(d).

Thus, in deciding Defendants' motion the Court will disregard the Montalvo Declaration and consider only the allegations in Plaintiff's First Amended Complaint, the parties' briefs, and the December 12, 2017 memorandum attached to Defendants' Motion.  With these limitations in mind, Plaintiff's claims against Defendants Diaz and Allison must be dismissed for failure adequately to allege deliberate indifference by either individual.  To understand this conclusion, however, it is useful first to review the governing law on deliberate indifference claims and the treatment of similar claims by other district courts.

In order to show deliberate indifference on the part of Defendants, Plaintiff must

satisfy a "two part inquiry." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2011).  First, Plaintiff must show that "prison officials were aware of a 'substantial risk of serious harm' to an inmates health or safety.'" *Id.* (quoting *Farmer*, 511 U.S. at 837).  This can be done "if the inmate shows that the risk posed by the deprivation is obvious." *Id.* (citing *Farmer*, 511 U.S. at 842 ("[A] factfinder may conclude that a prison official knew of a substantial risk [to a prisoner's health] from the very fact that the risk was obvious.")).  Whether a risk is "obvious" is determined "in light of reason and the basic general knowledge that a prison official may be presumed to have obtained regarding the type of deprivation involved. *See id.* at 1151.  "Second, the inmate must show that the prison officials had no 'reasonable' justification for the deprivation, in spite of that risk." *Id.* at 1150-51 (citing *Farmer*, 511 U.S. at 844).

Several other courts have confronted similar cases challenging CDCR's expansion of non-designated programming facilities.  As far as the Court can discern, these cases have not progressed much beyond the initial screening stage, and nearly all have denied efforts by inmates to obtain a preliminary injunction and temporary restraining order blocking the merger of sensitive needs and general population inmates into non-designated programming facilities. *See, e.g.*, *Haynes v. Diaz*, No. 1:19-cv-00813-EPG (PC), 2020 WL 2857947, at *1-3 (E.D. Cal. Mar. 4, 2020) (denying request for temporary restraining order and motion for preliminary injunction blocking "defendants from merging the [sensitive needs] and [general population] inmates . . . ."); *Borjas v. Diaz*, No. 19-cv-02038-PJH, 2019 WL 1787593, at *2 (N.D. Cal. Apr. 24, 2019) (same); *Hernandez v. Diaz*, No. 19-cv-2135-SI, 2019 WL 1779580, at *2 (N.D. Cal. Apr. 23, 2019) (denying motion for temporary restraining order or preliminary injunction "to prevent the merger of the different prisoner populations."); *Saucedo v. Diaz*, No. 19-cv-2032-SI, 2019 WL 1756541, at *2 (N.D. Cal. Apr. 19, 2019).  Several of these cases were dismissed for failure to state a claim during screening under 28 U.S.C. Sections 1915 and 1915A, or for procedural reasons like failure to prosecute or to exhaust administrative remedies. *See, e.g.*, *Mendez v. Diaz*, 1:19-cv-01759-NONE-BAM (PC), 2020 WL 1974231, at *4-6 (E.D. Cal. Apr. 24,

2020) (dismissing for failure to state an Eighth Amendment claim, in part because plaintiff did not allege "that each of the Defendants" including Diaz and Allison "knew of and disregarded an excessive risk of serious harm to Plaintiff's health or safety" (citation omitted)); *Haynes v. Diaz*, No. 1:19-cv-00813-NONE-EPG (PC), 2020 WL 2857948 (E.D. Cal. Apr. 21, 2020) (dismissing for failure to prosecute after plaintiff failed timely to file a first amended complaint in response to initial screening order dismissing for failure to state a claim); *Perez v. Diaz*, 2:19-cv-1295 TLN KJN P, 2019 WL 4166812, at *3 (E.D. Cal. Sept. 3, 2019) (dismissing for failure to exhaust administrative remedies).  Among these is a case, *Mendez v. Diaz*, in which the court concluded that allegations by a general population inmate "that, each and every time these mergers have taken place, intentionally or unintentionally, there have been well-documented incidents of violence where either the [sensitive needs yard] prisoners attacked and assaulted the [general population] prisoners out of fear for their lives" or vice versa was conclusory, and thus failed to state an Eighth Amendment claim against Defendants Diaz, Allison, and Ndoh.  *See Mendez*, 2020 WL 1974231, at *2, 5.  As mentioned previously, Plaintiff's First Amended Complaint contains virtually identical language.  (*See* FAC at 3-4.)

Plaintiff contends, however, that in two cases in the Northern District of California, "courts have found similarly situated prisoners to state a claim for relief with regard to these two Defendants and claims as liberally construed . . . ."  (ECF No. 23, at 6 (citing *Kester v. Diaz*, No. 19-cv-4205-JST (N.D. Cal.); *Cruz v. Diaz*, No. 19-cv-1974-LHK (N.D. Cal.)).)  In *Kester v. Diaz*, the court analyzed Eighth Amendment deliberate indifference claims against Diaz, Allison, and the Warden of Salinas Valley State Prison arising out of CDCR's efforts to merge the sensitive needs and general population inmates "in all Level 1 and 2 yards."  *See Kester v. Diaz*, No. 19-cv-4205-JST, 2019 WL 3997483, at *2 (N.D. Cal. Aug. 23, 2019).  Like Plaintiff's First Amended Complaint, the complaint in *Kester* alleged that "it has long been understood that [sensitive needs] inmates cannot safely merge with [general population] inmates" and it is "well documented that when [sensitive needs] and [general population] inmates have previously merged, there have been incidents of

violence." *See id.*  Unlike this case, *Kester* involved claims by a sensitive needs inmate who claimed that he would be endangered by the merger because of the risk that he would be attacked by general population inmates.  *See id.* at *3.  These risks were particularly salient in that case because a declaration attached to the *Kester* plaintiff's complaint explained that he feared for his life because "he is a convicted sex offender and a drop-out gang member; he has helped law enforcement obtain convictions for at least two [general population] inmates; and two separate [general population] gangs have offered a bounty for his death." *See id.* at *3.  Based on these facts, the *Kester* court concluded that the plaintiff was entitled to a temporary restraining order "enjoin[ing] [Defendants] from placing Plaintiff on an [non-designated programming facility] yard or otherwise requiring him to be housed with [general population] inmates." *Id.* at *5; *but see Kester v. Diaz*, No. 4:19-cv-4205-JST (N.D. Cal. Oct. 1, 2019), ECF No. 19, at 8 (denying a preliminary injunction in part because plaintiff was not housed in a non-designated programming facility and had not identified specific threats from general population inmates housed in merged yards).  Additionally, although the court did not analyze the question at length, the court also found that plaintiff's complaint stated a claim sufficient to survive initial screening and ordered service upon the defendants, including Diaz and Allison.  *See Kester*, 2019 WL 3997483, at *7.

The second case Plaintiff cites, *Cruz v. Diaz*, is now captioned *In re CTF GP Prisoner Litigation*, and consolidated under Federal Rule of Civil Procedure 42(a) the cases of three general population inmates at CTF Soledad who have also challenged the merger of sensitive needs and general population prisoners.  *See In re CTF GP Prisoner Litig.*, No. 5:19-cv-1974-LHK (N.D. Cal. Nov. 20, 2019), ECF No. 21, at 9 (consolidating three cases).   The initial complaint in that case is remarkably similar to Plaintiff's initial Complaint in this case, focusing on the December 12, 2017 and September 10, 2018 memoranda by Defendants Allison and Diaz, and copying almost verbatim Plaintiff's allegations about the results of past mergers of general population and sensitive needs inmates.  *Compare In re CTF*, ECF No. 1, at 3, *with* FAC at 3-4.  This initial complaint,

13

and the two others consolidated into it, was dismissed for failure to allege "facts suggesting that inmates in the general population will be put at risk of physical harm by any merger." *In re CTF*, ECF No. 12, at 8. Plaintiffs amended their allegations, however, to add specific instances of harm that they experienced or observed to general population inmates resulting from merged yards. *Id.* ECF No. 59, at 6-7. This, the court found, was sufficient to "state[] a cognizable claim that the proposed Merger places their safety at risk, and thus violates their Eighth Amendment rights." *Id.* at 7.

Because Plaintiff is a general population inmate, not a sensitive needs inmate, and does not identify particular reasons why he might be targeted for violence by other prisoners, he is differently situated than the plaintiff in *Kester. See Kester*, 2019 WL 3997483, at *3. Plaintiff is similarly situated to the plaintiffs in *In re CTF*, however, and like those Plaintiffs, his First Amended Complaint recounts specific instances of violence he has suffered at the hands of sensitive needs yards prisoners during his time in the merged non-designated programming facilities. (*See* FAC at 3-5.) It is important to note though that while Plaintiff is correct that the *In re CTF* and *Kester* courts found similar allegations stated a claim, those conclusions arose in the context of the sua sponte screening process for pro se prisoner claims, and not in response to a motion to dismiss. *See Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007) ("[T]he sua sponte screening and dismissal procedure is cumulative of, not a substitute for, any subsequent Rule 12(b)(6) motion that the defendant may choose to bring.").

The only allegations in Plaintiff's First Amended Complaint specific to Defendants Diaz and Allison are his references to the two memoranda regarding the process of creating non-designated programming facilities. As Defendants point out, there is no *respondeat superior* liability under Section 1983, and as a result, in order to state a claim against Diaz and Allison, Plaintiff must allege their "'personal involvement in the constitutional deprivation'" or "'a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *See Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) (quoting *Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991)

(en banc), *abrogated on other grounds by Farmer*, 511 U.S. at 837); *see also Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." (emphasis in original)).  Since Plaintiff does not allege that Defendants Diaz or Allison were personally aware of the risks inherent in creating merged yards or the harms he or other inmates suffered as a result of their creation,[2] he must show that Defendants Diaz and Allison promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'"  *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (quotation omitted).  Plaintiff has not done so.  *See Mendez*, 2020 WL 1974231, at *5 ("Plaintiff has not alleged any facts demonstrating that implementation of the [non-designated programming facilities] policy would always violate the Eighth Amendment, no matter which . . . inmates . . . or yards the policy was applied to.").  In addition, such a claim is belied by the contents of Defendant Allison's memorandum, which explains that the expansion of non-designated programming facilities is limited to "inmates demonstrating positive programming efforts and a desire not to get involved in the destructive cycles of violence," and that in order to be placed there, inmates must be "advised of programming expectations and positive programming reasoning for referral to a non-designated [programming facility]."  (ECF No. 18, at 25-26.)

Plaintiff fails to state a claim despite his allegation that such mergers have always resulted in violence when they have been attempted in the past.  (*See* FAC at 3-4.)  This assertion is conclusory and unsupported by any facts.  *See Mendez*, 2020 WL 1974231, at *5 (rejecting similar allegations as conclusory and explaining that "Plaintiff has not alleged facts showing that he told Defendants Diaz, Allison, and/or Ndoh, or that each of the Defendants was aware, of a non-speculative, specific risk to Plaintiff's health and safety.").

---

[2] Having disregarded the assertions in the Montalvo Declaration for purposes of this Motion, the Court expresses no opinion as to whether the facts contained therein, if alleged in an amended pleading, would demonstrate such knowledge on the part of Defendants Diaz or Allison.

Plaintiff's citation to two Ninth Circuit decisions, *Robinson v. Prunty*, 249 F.3d 862 (9th Cir. 2001) and *Hearns v. Terhune*, 413 F.3d 1036 (9th Cir. 2005), for the proposition that "the law was clearly established by 2017 . . . that these two population could not safely be mixed or housed together" does not establish Defendants' awareness of potential risks to Plaintiff's safety either.[3]   *Robinson* involved claims that a racially mixed yard posed a safety risk, not that merging general population and sensitive needs inmates into a single yard posed a risk to general population inmates.  *See Robinson*, 249 F.3d at 866-67 (holding that it was appropriate to deny qualified immunity where plaintiff alleged a "gladiator-like scenario, in which prison guards are aware that placing inmates of different races in the yard at the same time presents a serious risk of violent outbreaks.").  *Hearns*, which considered whether prison officials were deliberately indifferent to the risks of religiously motivated violence within the prison's Muslim community, is similarly inapposite.  *See Hearns*, 413 F.3d at 1040-41.

Because Plaintiff has not alleged sufficient "factual content that allows the court to draw the reasonable inference" that Defendants Diaz or Allison were deliberately indifferent to Plaintiff's safety, Defendants' Motion to Dismiss the claims against these Defendants is **GRANTED**.  *See Iqbal*, 556 U.S. at 678.  Given the contents of the Montalvo Declaration and the possibility that Plaintiff may be able to allege additional facts bearing on the deficiencies identified above, including citations to previous mergers in which general population prisoners were harmed by sensitive needs prisoners post-merger, leave

---

[3] Because Plaintiff's claims are dismissed in their entirety for failure to state a claim, the Court need not address Defendants' alternative argument that Plaintiff's claims are barred by qualified immunity.  *See, e.g.*, *Aguilera v. Baca*, 510 F.3d 1161, 1167, 1174 (9th Cir. 2007) (noting that if no constitutional violation occurred the court need not decide whether qualified immunity applies).  Although the cases discussed above and cited by Plaintiff arose in the context of claims of qualified immunity, the Court discusses them here only to the extent they bear on Defendants Diaz and Allison's awareness of a substantial risk to Plaintiff's safety in adopting the merger policy or whether the policy they adopted was "so deficient that the policy 'itself is a repudiation of constitutional rights . . . .'"  *See Hansen*, 885 F.2d at 646 (quotation omitted).  The Court does not express an opinion as to whether Defendants may be able to show that some or all of Plaintiff's claims are barred by qualified immunity at a later stage in the case.

to amend is granted, as discussed further below.

C.   Defendant Covello

As mentioned, Plaintiff alleges that Defendant Covello, the Warden of RJD, was deliberately indifferent to Plaintiff's safety when he assigned Plaintiff to a non-designated programming facility after Plaintiff experienced several attacks by sensitive needs prisoners in a similar merged yard at RJD.  (*See* FAC at 4-5.)  Specifically, Plaintiff alleges that shortly after arriving at RJD he was assigned to a non-designated programming facility and immediately attacked by sensitive needs inmates who seriously injured Plaintiff's face and neck.  (*See id.* at 4.)  After two days in administrative segregation, Plaintiff was returned to that yard where he experienced "another physical altercation" with a sensitive needs yard prisoner.  (*See id.*)  Subsequently, Plaintiff was "taken to committee," where a counselor and captain recommended that Plaintiff be transferred to a general population yard for his safety.  (*See id.*)  Before that could happen, Plaintiff was "taken to committee again," this time before Warden Covello.  (*See id.*)  Covello asked Plaintiff "what would happen" if he was placed in a different merged yard, to which Plaintiff responded he was "'a General Population inmate.'"  (*Id.* at 5 (quotation in original).)  Covello "cut the Plaintiff off and snapped and said 'send him, get him out of here,'" before threatening to assign Plaintiff to a higher security yard.  (*See id.*)  Subsequently, Plaintiff was assigned to another merged yard where he was "immediately involved in another altercation" with a sensitive needs inmate.  (*See id.*)

Defendants argue that these allegations do not demonstrate deliberate indifference on the part of Warden Covello.  Specifically, Defendants contend that "[t]here is no allegation that Warden Covello had anything to do with Plaintiff's initial placement and retention on the [merged] yard or that [Covello] was aware of Plaintiff's problems on that yard until plaintiff went to committee . . . where . . . Covello was present and asked Plaintiff about his safety concerns."  (*See* ECF No. 18, at 16.)  Defendants further argue that Plaintiff's statement at the meeting that he was "a General Population inmate," (*see* FAC at 5 (internal quotation marks omitted)), did not "indicate [to Covello] that [Plaintiff]

17

would resort to violence or that he had any enemy concerns on [the] new yard." (*See* ECF No. 18, at 16.) By ensuring that Plaintiff was not returned to the yard where he was previously assaulted, and instead assigning Plaintiff to a different, higher level non-designated programming facility, Defendants contend that Covello acted reasonably and was not deliberately indifferent to Plaintiff's safety.

Although Plaintiff suggests that Defendants' arguments are based on "factual disputes rather than any deficiencies in Plaintiff's claims," (*see* ECF No. 23, at 7), Plaintiff's allegations, taken as true, demonstrate that he fails to state a claim against Defendant Covello. With respect to the first attack against Plaintiff, which occurred three days after he arrived at RJD, the First Amended Complaint does not allege that Covello was responsible for Plaintiff's assignment to "the minimum yard (M yard), level one," a non-designated programming facility, let alone that Covello had any reason to believe Plaintiff would be in danger there. (*See* FAC at 4.) Indeed, Plaintiff alleges that an unnamed captain was responsible for his release to M Yard. (*See id.*) Nor does Plaintiff allege any involvement by Covello in Plaintiff's return to that yard two days later, when he was involved in another altercation with an inmate. (*See id.*) Although Plaintiff pleaded that a "counselor and captain" recommended that Plaintiff be transferred to a general population yard "as he could not safely program on a[] [non-designated programming facility] yard," Plaintiff does not allege that Covello was aware of that conclusion either. (*See id.*) When Plaintiff first spoke to Defendant Covello in committee, all Plaintiff alleges that he told the Warden was "I am a General Population inmate," (*See id.* at 5 (internal quotation marks omitted).) which is not sufficient to "allow[] the court to draw the reasonable inference," *Iqbal*, 556 U.S. at 678, that Covello had any reason to believe Plaintiff would be in danger if he was assigned to any of the several non-designated programming facilities within RJD. (*See* FAC at 4-5.) As a result, Plaintiff has not alleged that Covello "kn[ew] of and disregard[ed] an excessive risk to [Plaintiff's] health or safety," or that Covello was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and . . . also dr[e]w the inference." *See*

*Farmer*, 511 U.S. at 837; *see also Berg v. Kincheloe*, 794 F.2d 457, 460 (9th Cir. 1986) (concluding that summary judgment was appropriate as to defendant prison officials where plaintiff "failed to come forward with facts showing that these defendants had any reason to believe [plaintiff] would be attacked by the assailant." (citations omitted)).

Accordingly, Defendants' Motion to Dismiss Plaintiff's claims against Defendant Covello is **GRANTED** and these claims are dismissed for failure to state a claim.  As explained below, leave to amend is granted to cure the deficiencies identified.

### D.   Declaratory and Injunctive Relief

In addition to seeking compensatory and punitive damages, the First Amended Complaint seeks a declaratory judgment that Defendants' actions violated the Eighth Amendment and injunctive relief barring Defendants from merging sensitive needs and general population inmates into non-designated programming facilities.  (*See* FAC at 6.) Defendants point out that these claims are moot now that Plaintiff has been released from custody.  *See Cano v. Taylor*, 739 F.3d 1214, 1221 (9th Cir. 2014) ("Consistent with case law, [Plaintiff's] claims for injunctive and declaratory relief are mooted by his release from prison, but his other claims may not be.").  Plaintiff agrees that these claims are moot and states that he no longer pursues them.  (*See* ECF No. 23, at 7.)  The Court agrees. Defendants' Motion to Dismiss Plaintiff's declaratory and injunctive claims is **GRANTED**.

### E.   Official Capacity Claims

Defendants also contend that because Plaintiff's declaratory and injunctive claims are moot, the Eleventh Amendment bars any remaining damages claims against Defendants in their official capacities.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-71 (1989); *Douglas v. Cal. Dep't of Youth Auth.*, 271 F.3d 812, 817-818 (9th Cir. 2001). Plaintiff does not respond to Defendants' argument, which is correct.  Accordingly, Defendants' Motion to Dismiss Plaintiff's official capacity claims is **GRANTED**, and the leave to amend granted below is solely as to claims for damages against the Defendants in their individual capacities.

#### IV.    Leave to Amend

As mentioned, in light of the facts in the Montalvo Declaration, as well as Plaintiff's pro se status, the Court grants Plaintiff **forty-five (45) days** leave to amend to cure the deficiencies in his claims against Defendants. *See AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) ("Rule 15(a) is very liberal and leave to amend shall be freely given when justice so requires." (quotation omitted)). This leave to amend is granted solely as to damages claims against Defendants in their individual capacities.

Plaintiff's Second Amended Complaint must be complete in itself, without reference to Plaintiff's original pleading, and any claims Plaintiff fails to reallege against any of the Defendants will be considered waived. *See* S.D. Cal. Civ. L.R. 15.1; *Lacey*, 693 F.3d at 928 (noting that claims dismissed with leave to amend that are not re-alleged in an amended pleading may be "considered waived if not repled"); *Hal Roach*, 896 F.2d at 1546 ("[A]n amended pleading supersedes the original.").

#### V.    Conclusion and Orders

Accordingly, the Court:

(1)    **GRANTS** Defendants' Motion to Dismiss Plaintiff's claims (ECF No. 18);

(2)    **GRANTS** Plaintiff **forty-five (45) days** leave to file a Second Amended Complaint. If Plaintiff fails to file a Second Amended Complaint within the time provided, the Court will enter a final order dismissing this action in its entirety based both on Plaintiff's failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court

/ / / / /

/ / / / /

/ / / / /

/ / / / /

/ / / / /

may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED**.

Dated:  June 25, 2020

_____

Hon. Cathy Ann Bencivengo
United States District Judge

3:19-cv-00363-CAB-JLB